Breitel, J.
The issue is whether a mother may recover against a tort-feasor for her own mental and physical injuries caused by shock and fear for her two-year-old child who suffered serious injuries in an automobile accident. The appeal rises on the pleading alone which alleges that the accident occurred in the mother’s full view and presence. In fact, the examination before trial taken of the mother, and somehow made a part of the record,* reveals that the accident did not occur in the mother’s presence, but while she was nearby and heard the screech of automobile brakes. She immediately went to the scene, a few feet away, and saw her injured child lying on the ground.
It is concluded that under the well-established applicable doctrines no cause of action lies for unintended harm sustained by one, solely as a result of injuries inflicted directly upon another, regardless of the relationship and whether the one was an eyewitness to the incident which resulted in the direct injuries. Consequently, the order dismissing such a cause of action was proper and should be affirmed.
Until 1968 no upper court case in this country had held that a mother could recover for her own injuries due to shock and fear for her child as a result of an accident occurring in her view (but for English precedent, compare Boardman v. Sanderson, 1 W. L. R. 1317 [C. A., 1964] with King v. Phillips, [1953] 1 Q. B. 429). In 1968 the Supreme Court of California, by a closely divided court, overruled its five-year old holding to contrary effect, also by a closely divided court of somewhat *612 different composition, and permitted recovery but only where the accident had occurred in the mother’s presence (Dillon v. Legg, 68 Cal. 2d 728, overruling Amaya v. Home Ice, Fuel & Supply Co., 59 Cal. 2d 295). No American case has held that a mother can recover for her own injuries due to shock and fear for her child as a result of an accident which she did not view. One English case holding otherwise has been thereafter distinguished (compare Hambrook v. Stokes Bros., [1925] 1 K. B. 141 [C. A.] with Bourhill v. Young, [1943] A. C. 92).
It is in this context of pleading and variant pretrial proof, against a background of top-heavy precedential authority and doctrine denying a cause of action, that this appeal is before the court.
Plaintiff mother’s cause of action was sustained at Special Term on motion by defendant to dismiss for insufficiency the third, and relevant cause of action (55 Misc 2d 304). The Appellate Division unanimously reversed and dismissed the cause of action (30 A D 2d 229).
Taking the allegations as true, as one must, on a motion addressed to the pleadings (Kober v. Kober, 16 N Y 2d 191, 193), the following appears: On September 18, 1966, defendant, negligently operating his automobile, struck plaintiff’s two-year-old son, Gregory, causing severe injuries, including cerebral damage, to Mm, and emotional and physical injuries to plaintiff, in whose full view and presence the accident occurred. Of course, as already noted, the pretrial examination of the mother reveals that in fact the mother was inside a neighbor’s home, outside of which the momentarily unattended child was struck, and she did not see the accident. But she did hear the screech of brakes, noted the absence of her child, went instantly outside, and saw him lying on the ground.While the court is limited to a determination of the sufficiency of the pleading, this court, unlike the California high court, cannot practically limit, its consideration to the pleaded facts before it and leave, as that court said, to a case-by-case development any extensions to be evolved (Dillon v. Legg, supra, p. 740). In this case, the additional undisputed and varying facts of the pretrial examination are before the court in the record. It is already evident that this action, if it were to go to trial, would involve a mother who was not an eyewitness.
*613 The problem presented is double-faceted. The first is the recoverability for injuries sustained solely as a result of an initial mental or psychological impact, but with ensuing mental illness and physical injury. The second is the scope of duty to one who is not directly the victim of an accident causing severe physical injury to a third person.
On the first facet, there is no longer any question. Since Battalla v. State of New York (10 N Y 2d 237) the rule is now settled that one may have a cause of action for injuries sustained although precipitated by a negligently induced mental trauma without physical impact. As much had been presaged in Ferrara v. Galluchio (5 N Y 2d 16), albeit that case involved a somewhat narrower holding (id., p. 22).
It is the second facet which presents both novelty and difficulty, namely, whether the concept of duty in tort should be extended to third persons, who do not sustain any physical impact in the accident or fear for their own safety. Unlike the problem in the first facet, there are no parallels. Its solution does not depend upon advances in medical science, namely, that mental traumatic causation can now be diagnosed almost as well as physical traumatic causation. The question is profounder than that, because there is now urged the creation of a new duty and therefore an entirely new cause of action.
In recent years this court has expanded many tort concepts, but they have been only expansions rather than significant creations of entirely new causes of action. Thus, in the Battalia and Ferrara cases (supra), the reality of psychological causation with consequent mental and physical harms was recognized in an area where previously even the slightest physical impact would have been sufficient to establish a cause of action. Although in Millington v. Southeastern Elevator Co. (22 N Y 2d 498) it was necessary to strike down a bar to a wife’s recovery for loss of consortium, the fact of such harm was always evident and recovery had always been allowed to the husband in the converse situation. The explanation for the discrimination was an historical anomaly and rested on a purely conceptual distinction. Although in Gelbman v. Gelbman (23 N Y 2d 434) the immunity from suit between parent and child for nonintentional tort was abandoned, there was no such intrafamily immunity for intentional tort, and precisely the same *614 conduct between others would give rise to a cause of action. In Bing v. Thunig (2 N Y 2d 656) the immunity enjoyed by charitable hospitals for negligent “medical ” acts of its employees was struck down. In any other context there would have been a bause of action.
Similarly, Woods v. Lancet (303 N. Y. 349) involved well-understood harms but for which recovery had theretofore been barred only because of difficulties in recognizing the personality as entitled to sue. In that case plaintiff was permitted to recover for .injuries sustained while a fetus in útero resulting from impact on the mother. Plaintiff, who had been the direct object of the harm inflicted, would have had a cause of action, except for the conceptual difficulty of not having been a legal person with capacity to sue at the time the wrong was committed.
On the other hand, the court was unanimous in denying a cause of action for an alleg’ed wrong which the law had never before recognized as a wrong at all (Williams v. State of New York, 18 N Y 2d 481, 483). The Williams case involved an action by an illegitimate child conceived in a State mental hospital of a mentally deficient mother who was not protected from sexual attack. Damages were sought for a “wrongful life”. The court, in discussing its recent expansions of tort concepts, observed: “ In none of these were we asked to, nor did we, go so far as to invent a brand new ground for suit ” (p. 483).
Of course, the common law is not circumscribed by syllogisms, however constructed out of precedents, and this case presents an acute issue that will not pass merely by the incantation of a logical formula.
If that were not so, the developments in the field of products liability would never have taken place. True, the landmark cases in that area did not acknowledge creation of new causes of action or describe new harms as compensable, but they certainly broadened the range of duty and, therefore, of liability (e.g., MacPherson v. Buick Motor Co., 217 N. Y. 382; Greenberg v. Lorenz, 9 N Y 2d 195; Goldberg v. Kollsman Instrument Corp., 12 N Y 2d 432). Thus, for all practical purposes, in a limited sense, new causes of action were created when liability was imposed on others than the mere purveyors of goods or services.
*615 The impact on a mother of a serious injury to her child of tender years is poignantly evident. This has always been so. Unlike the factors which have brought about most expanding tort concepts, here there are no new technological, economic, or social developments which have changed social and economic relationships and therefore no impetus for a corresponding legal recognition of such changes. Hence, a radical change in policy is required before one may recognize a cause of action in this case.
To resolve the issue, the many converging policy factors must be considered. In both the Amaya and Dillon cases (supra), decided in the California court, the several opinions on both sides of the issue are exhaustive and of great value in analyzing the policy factors.
The several factors most often considered in discussion of this problem are foreseeability of the injury, proliferation of claims, fraudulent claims, inconsistency of the zone of danger rule, unlimited liability, unduly burdensome liability, and the difficulty of circumscribing the area of liability. It is quickly evident that the factors are not mutually exclusive but overlap in various degrees.
On foreseeability, it is hardly cogent to assert that the negligent actor if he could foresee injury to the child that he should not also foresee at the same time harm to the mother who, especially in the case of children of tender years, is likely to be present or about (Prosser, Torts [3d ed.], p. 353). But foreseeability, once recognized, is not so easily limited. Relatives, other than the mother, such as fathers or grandparents, or even other caretakers, equally sensitive and as easily harmed, may be just as foreseeably affected. Hence, foreseeability would, in short order, extend logically to caretakers other than the mother, and ultimately to affected bystanders.
This court has rejected as a ground for denying a cause of action that there will be a proliferation of claims. It suffices that if a cognizable wrong has been committed that there must be a remedy, whatever the burden of the courts. Similarly, it has rejected the argument that recognizing a right of recovery may increase the number of fraudulent claims, so long as the damages are not too conjectural. (Battalla v. State of New York, 10 N Y 2d 237, 241-242, supra.) Thus, in the Battalia *616 case, it was said: ‘ ‘ Although fraud, extra litigation and a measure of speculation are, of course, possibilities, it is no reason for a court to eschew a measure of its jurisdiction. ‘ The argument from mere expediency cannot commend itself to a Court of Justice, resulting in the denial of a logical legal right and remedy in all cases because in some a fictitious injury may be urged as a real one. ’ * * * The only substantial policy argument * * * is that the damages or injuries are somewhat speculative and difficult to prove. However, the question of proof in individual situations should not be the arbitrary basis upon which to bar all actions * * * In the difficult cases, we must look to the quality and genuineness of proof, and rely to an extent on the contemporary sophistication of the medical profession and the ability of the court and jury to weed out the dishonest claims. Claimant should, therefore, be given an opportunity to prove that her injuries were proximately caused by defendant’s negligence” (pp. 240-242; emphasis in original).
Quite relevant to the present problem is the zone of danger rule. In some of the States a parent has been permitted to recover for the inseparable consequences of fear for his child’s safety as well as his own, if at the time of the accident he, himself, was in the zone of danger created by the negligent actor (Bowman v. Williams, 164 Md. 397; see, also, Amaya v. Home Ice, Fuel & Supply Co., supra, pp. 305-306; Restatement, 2d, Torts, § 313, Comment d).- This has been said to be a rather arbitrary limiting rule which has the unpalatable consequence that a mother who also fears for herself may recover while, if she does not or has no such similar opportunity, she may not recover (Dillon v. Legg, supra, p. 747).
The problem of unlimited liability is suggested by the unforeseeable consequence of extending recovery for harm to others than those directly involved in the accident. If foreseeability be the sole test, then once liability is extended the logic of the principle would not and could not remain confined. It would extend to older children, fathers, grandparents, relatives, or others in loco parentis, and even to sensitive caretakers, or even any other affected bystanders. Moreover, in any one accident, there might well be more than one person indirectly but seriously affected by the shock of injury or death to the child.
*617 The factor of unduly burdensome liability is a kind of dollars- and-cents argument. It does not vanish, however, by reference to wide-spread or compulsory insurance. Constantly advancing insurance costs can become an undue burden as well, and the aggregate recoveries in a single accident of this kind are not likely to stay within ordinary, let alone, compulsory insurance liability limits.
The final and most difficult factor is any reasonable circumscription, within tolerable limits required ,by public policy, of a rule creating liability. Every parent who loses a child or whose child of any age suffers an injury is likely to sustain grievous psychological trauma, with the added risk of consequential physical harm. Any rule based solely on eyewitnessing the accident could stand only until the first case comes along in which the parent is in the immediate vicinity but did not see the accident. Moreover, the instant advice that one’s child has been killed or injured, by telephone, word of mouth, or by whatever means, even if delayed, will have in most eases the same impact. The sight of gore and exposed bones is not necessary to provide special impact on a parent. Again, the logical difficulty of excluding the grandparent, the relatives, or others in loco parentis, and even the conscientious and sensitive caretaker, from a right to recover, if in fact the accident had the grave consequences claimed, raises subtle and elusive hazards in devising a sound rule in this field.
This case is particularly illustrative — just because the pretrial examination reveals that if the pleaded cause of action is sustained the trial court will be faced not with an eyewitness mother, but with one who comes upon the scene immediately following the accident.
Confronted with these considerations, the courts, for the most part, have refused to extend the duty of the negligent actor to cover the mother of the small child (see Ann.: Damages-Shock-Witnessing Injury, 18 ALR 2d 220). Interestingly, the text-writers and commentators have generally taken a contrary view of what should be the law (e.g., Prosser, Torts [3d ed.], pp. 352-354; 2 Harper and James, The Law of Torts, pp. 1035-1036; Tymann, Bystanders’ Recovery for Psychic Injury in New York, 32 Albany L. Rev. 489; case note, 43 N. Y. U. L. Rev. 1252). The Restatement of Torts originally carried a caveat *618 suggesting that a parent or spouse might be entitled to recover for harm suffered as a result of injury to the child or other spouse (2 Restatement, Torts, § 313, Caveat). In Restatement, Second, Torts, the caveat was stricken, not because there were not those who wished it to remain, but because case authority had settled that there was no liability (2 Restatement, 2d, Torts, § 313; 4 Restatement, 2d, Torts, Appendix to § 313, p. 11). In this State, the courts have split on the question (compare Napolitano v. Town of Chili, 47 Misc 2d 920, affd. 29 A D 2d 845; Lahann v. Cravotta, 228 N. Y. S. 2d 371; Berg v. Baum, 224 N. Y. S. 2d 974; with Bond v. Smith, 52 Misc 2d 186; and Haight v. McEwen, 43 Misc 2d 582).
Assuming that there are cogent reasons for extending liability in favor of victims of shock resulting from injury to others, there appears to be no rational way to limit the scope of liability. Prosser, the reporter for the Restatement, Second, in Torts, and a stalwart in favor of extending liability, confesses that there is no way out of the problem of unlimited liability except by establishing arbitrary distinctions which he recommends doing (Prosser, op. cit. p. 354).
In the Dillon case (supra) the court suggested three limiting standards: “ (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the accident victim were closely related, as contrasted with the absence of any relationship or the presence of only a distant relationship ” (id., pp. 740-741). Indeed, these limiting-conditions were suggested by Dean Prosser (Prosser, loc. cit.). For reasons already discussed or suggested, none of these standards are of much help if they are to serve the purpose of holding strict rein on liability and if the test is to be a reasonably objective one.
In this very case, as already noted, the eyewitness limitation provides no rational practical boundary for liability. The distance from the scene and time of notice of the accident are quite inconsequential for the shock more likely results from the relationship with the injured party than what is seen of the *619 accident. The age of the child, always assumed to be relevant, is difficult to define or limit. Indeed, it may be callous to assess as lesser the loss or injury of an older child than a younger one. Nor can the father, the grandparents, the siblings and other relatives, or even others in loco parentis, be excluded on any acceptable rational basis, although, to be sure, distinctions can be made and verbalized. It is quite significant, too, that the now discarded caveat in the first Restatement referred to spouses as possibly being entitled to recover for shock and its consequences. Indeed, whichever way one turns in permitting a theory of recovery one is entangled in the inevitable ramifications which will not stay defined or limited. There are too many factors and each too relative to permit creation of only a limited scope of liability or duty.
Beyond practical difficulties there is a limit to attaining essential justice in this area. While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. The risks of indirect harm from the loss or injury of loved ones is pervasive and inevitably realized at one time or another. Only a very small part of that risk is brought about by the culpable acts of others. This is the risk of living and bearing children. It is enough that the law establishes liability in favor of those directly or intentionally harmed.
Accordingly, the order of the Appellate Division should be affirmed, without costs.

 Special Term had denied the moton to dismiss the third cause of action for insufficiency. Thereafter, the examination was conducted and defendant moved for reargument on the basis of what it revealed. That motion was also denied. On appeal from both orders, the Appellate Division reversed on the first order and dismissed the appeal from the denial of reargument. Plaintiff has appealed to this court only from the order reversing Special Term.