Chief Judge Breitel (dissenting).
The analytical trichotomy in the majority opinion is intriguing, but does not meet the basis for my disagreement.
True, the courts in this State are now long past difficulty in accepting psychic trauma as compensable even if such trauma *512 be the sole result of a physical event or accident suffered by a claimant or plaintiff (e.g., Matter of Griffiths v Shaffrey, 308 NY 729; Battalla v State of New York, 10 NY2d 237, 240). The core problem in the instant case is, however, whether psychic trauma will be accepted as a basis for recovery in tort or compensation where the trauma to the plaintiff or claimant is caused by a physical event or accident which happens to another (e.g., Tobin v Grossman, 24 NY2d 609).
And, of course, the issue should not be addressed as a purely analytical one from the point of view of the logicist. The rules of law and their logic are rooted in the realities of society.
The manifold ramifications of possible psychic trauma to the preconditioned from the impact of events and accidents that occur to other is unlimited, and the lines to be drawn between those proximate or remote to the event or accident are indiscernible on any rational or practical basis (see Tobin v Grossman, 24 NY2d 609, 615-616, supra). More important, the vulnerability to psychic trauma, and for this one needs no expert to tell us, is, as the physicians say, idiopathic, that is, causally related to the peculiar makeup of the "bystander”, even the concerned bystander, who observed the event or accident. This case is illustrative. The subsequent characterization of claimant as a "pseudoneurotic schizophrenic with paranoid features”, of which her "acute depressive reaction” was but one symptomatic manifestation, explains the psychological experience undergone by her after the suicide of her superior. That experience could never have occurred unless she, to begin with, was extraordinarily vulnerable to severe shock at or away from her place of employment or one produced by accident or injury to those close to her in her employment or in her private life.
It is the passive and "unconnected” status of the claimant to the accident or event which evoked her mental symptoms which distinguishes this case from others. Thus, one could agree with the truly vigorous dissent by Judge Dye in Matter of Chernin v Progress Serv. Co. (9 NY2d 880, 882), and yet disagree with the majority in this case. The claimant in the Chernin case was the actor in and the "cause” of the unsettling accident. The claimant in this case would be comparable if somehow her conduct "caused” her superior’s suicide.
It should also be noted that, with the exception of Yates v South Kirkby Collieries ([1910] 2 KB 538), the cases and *513 treatise cited by the majority all involve accidents or events where the claimant was directly involved in the traumatic experience as a participant, either as subject or object of the accident or event, and not as a mere onlooker. In this country no "mere onlooker” cases have been found except Hacket v Travelers Ins. Co. (195 So 2d 758 [La]). In the Hacket case, under a statute restricted to physical injury, compensation was denied to a claimant who became disabled as a result of a psychological problem which developed after two men he was working with were killed in a dynamite blast. Even the old English case, the Yates case (supra), involved no mere onlooker, but a worker who went to the aid of his fellow worker to whom the accident occurred, and suffered only mental trauma from the occurrence (cf. Todd v Goostree, 493 SW2d 411 [Mo]). As this court has held, "danger invites rescue” and the rescuer may recover even in tort on a nexus of liability (Wagner v International Ry. Co., 232 NY 176, 180 [Cardozo, J.]; Guarino v Mine Safety Appliance Co, 25 NY2d 460, 463).
This analysis is not discordant with the view of a majority of the jurisdictions allowing compensation for mental trauma alone to a claimant who has been the object or subject of an occupational accident or event with only psychological causation. Nor is this analysis discordant with the treatment of that issue and the criticism of Larson in his treatise of some of the "precedents” in this State, such as the Chernin case (supra) (1A Larson, Workmen’s Compensation Law, § 42.23).
The holding in this case does not open a door, which a reassessment of the rule urged by Judge Dye in the Chernin case (supra) would do, but tears down a whole side of the structure. One can easily call up a myriad of commonplace occupational pursuits where employees are often exposed to the misfortunes of others which may in the mentally unstable evoke precisely the symptoms which this claimant suffered. Most important, the occasion for extension in the workmen’s compensation field is less today, when there exists ordinary disability benefits as there were not in the first half of this century (see Workmen’s Compensation Law, art 9).
In an era marked by examples of overburdening of socially desirable programs with resultant curtailment or destruction of such programs, a realistic assessment of impact of doctrine is imperative. An overburdening of the compensation system by injudicious and open-ended expansion of compensation benefits, especially for costly, prolonged, and often only ame *514 liorative psychiatric care, cannot but threaten its soundness or that of the enterprises upon which it depends.
Accordingly, I dissent and vote to affirm the order of the Appellate Division.
Judges Gabrielli, Jones, and Fuchsberg concur with Judge Wachtler; Chief Judge Breitel dissents and votes to affirm in a separate opinion in which Judge Jasen concurs; Judge Cooke taking no part.
Order reversed, etc.