164

EDMUND SHANAHAN, Individually and as Admininstrator of the Estate of MARGARET SHANAHAN, Deceased, Respondent, v SOL ORENSTEIN et al., Doing Business as BUHRE AVENUE Co., et al., Appellants. (Action No. 1)

PATRICK F. McLOUGHLIN, Individually and as Administrator of the Estate of TERENCE E. McLOUGHLIN, Deceased, Respondent-Appellant, and PATRICK F. McLOUGHLIN et al., Appellants, v BUHRE AVENUE Co., INC., Appellant-Respondent. (Action No. 2)

First Department, May 13, 1976

*George J. Siracuse* of counsel *(Barry, McTiernan, Moore & Siracuse,* attorneys), for appellants in Actions No. 1 and 2.

*David G. Miller* of counsel *(Theodore H. Friedman* with him

on the brief; *Arum, Friedman & Katz,* attorneys), for respondent-appellant and appellants.

*Arthur N. Seiff* of counsel *(Frank Durkan* with him on the brief; *O'Dwyer & Bernstein* attorneys), for Edmund Shanahan, as administrator of the estate of Margaret Shanahan, deceased, and Edmund Shanahan, respondents.

LUPIANO, J. On Sunday, May 10, 1970 (Mother's Day), plaintiff Mary Ann McLoughlin, then 27 years of age, was returning home from church services with her two children, Margaret (3-1/2 years of age) and Terence (2-1/2 years of age), accompanied by her mother, Margaret Shanahan (62 years of age). The group proceeded along Buhre Avenue in Bronx County and came abreast of defendants' one-story taxpayer building. At this point, the infant Margaret walked ahead, necessitating her mother's "catching up" to ensure that she did not go near the street. Mrs. McLoughlin testified that she "turned around to see how far [her mother and Terence] were behind us, and I heard Terence asking my mother for a cookie. And she stopped and reached into her bag to get him a cookie. Then I turned back to my daughter Margaret and a girl that I had met and said, hello, that was standing next to us, and I heard a loud roar. And I turned around. And just—I didn't know where the bricks were coming from. I thought the heavens just opened up and fell down on them. The noise was so loud. And I looked where my mother and Terence—I just seen them standing and they weren't standing any more. So I immediately ran back. And as I did so the bricks were falling and hit the side of my body. I ran over and I saw Terence and my mother under the bricks. And I picked Terence up."

A bystander also rushed to aid Mrs. McLoughlin and the fallen victims and through his intervention Mrs. McLoughlin was able to remove Terence, who was moaning, from the debris. He took Mrs. McLoughlin and her son to the hospital. Mrs. McLoughlin, holding her injured son on her lap in the back seat of the vehicle, had for the first time a chance to look at his body. She testified that his legs were hanging off at the sides * * * He had a little sun suit on, so it was very clear to me what I saw. I went to push his legs back on but I was afraid they would fall off. And as I did so I grabbed his shoes and saw that his ankles were the same way his thighs were". Terence died on the evening of the same day from cardiac

arrest following surgery necessitated by the previous injuries he sustained.

The injuries sustained by Mary Ann McLoughlin's mother were severe, including comminuted compound fractures of the legs, pelvis, and ribs, a severe avulsion laceration of the scalp, and a spinal cord trans-section at about the middle of her back which paralyzed her from that point down. She was conscious with some intermittent periods of unconsciousness, and underwent two operations not under anesthesia. Mrs. Shanahan died as a consequence of her injuries on May 19, 1970.

On the top of defendant's building was a brick parapet approximately seven feet in height and one hundred feet long. This parapet had been observed to be leaning outward toward the sidewalk for a period of at least six months prior to the accident. The falling of this parapet wall occasioned the accident at issue herein.

After trial the jury returned a verdict in favor of Patrick Francis McLoughlin (Terence's father) as administrator of the deceased infant in the amount of $150,000 for wrongful death and $25,000 for conscious pain and suffering. The trial court reduced the award for wrongful death to $40,000 and for conscious pain and suffering to $5,000. The jury verdict in favor of Edmund Shanahan, the surviving spouse of Margaret Shanahan, in his capacity as administrator of her estate in the amount of $75,000 for wrongful death and $25,000 for conscious pain and suffering was not disturbed. However, the jury verdict in the sum of $50,000 in favor of Edmund Shanahan, individually, in his derivative action for loss of services was found to be excessive in light of such loss accruing for only a 10-day period and a new trial was ordered unless Mr. Shanahan stipulated to reduce the verdict to $2,000.

In the McLoughlin action, plaintiff Mary Ann McLoughlin in the fourth cause of action set forth in the complaint asserts that Terence at the time of the accident was *accompanied* by members of his family and that she therefore was a witness to the accident and "suffered severe emotional and mental trauma and anxiety and grief, with residual physical effects, resulting solely from the negligence of the defendant." At the trial's inception, the corporate defendant for the first time moved to dismiss this cause of action on the authority of *Tobin v Grossman* (24 NY2d 609). This motion was granted by the trial court. Plaintiff thereupon took exception and moved

to amend her complaint by asserting a cause of action, similar to the previously pleaded fourth cause of action, but limiting damages to the emotional trauma sustained as a result of her own involvement in the accident, as distinguished from damages she suffered only because she saw a building fall on her son and mother. The trial court originally granted this application, but subsequently, *sua sponte,* reversed itself, viewing the amended claim as a "new cause of action" which is barred by the Statute of Limitations. Study of the rationale set forth in *Tobin v Grossman (supra),* impels the conclusion that plaintiff Mary Ann McLoughlin may not recover merely because she was an eyewitness to the occurrence resulting in the deaths of her infant son and mother. Similarly, it does not stand for the proposition that she cannot recover because she was an observer of the accident. Beyond peradventure Mary Ann McLoughlin was not only an observer of, but a participant in the occurrence. In analyzing the considerations which give rise to the rule enunciated in *Tobin v Grossman,* Chief Judge, then Judge BREITEL, initially observed that as to the scope of duty to one who is not directly the victim of an accident causing severe physical injury to a third person, the problem is "whether the concept of duty in tort should be extended to third persons, who do not sustain any physical impact in the accident or fear for their own safety" *(Tobin v Grossman, supra,* p 613). Mrs. McLoughlin did not under the facts as narrated by her sustain injury *solely* as the result of the injuries directly inflicted on her son and mother, but sustained harm as a consequence of being within the zone of danger and responding to her natural instinct to rescue her child and mother during the course of the occurrence. The bricks were still falling, according to plaintiff, as she advanced to her infant son and her mother and she was struck by some of them. The circumstances herein are unique and fall without the ambit of the rule enunciated in *Tobin v Grossman (supra).* Being directly involved in the accident, said plaintiff's claim does not create the problem of unlimited liability which engaged the attention of the *Tobin* court.

Viewing the allegations of the fourth cause of action asserted by Mary Ann McLoughlin in the context of the type of accident occurring, namely, the collapse of an entire parapet wall with consequent raining of hundreds of bricks into the street below, the defendants could not reasonably construe the averment that Mrs. McLoughlin "was a witness to the afore-

said occurrence" in a narrow sense. It was clearly averred that the infant decedent was accompanied by members of his family at the time of the occurrence. On a motion to dismiss for failure to state a cause of action, the pleading must be liberally construed and every fair intendment given to the allegations contained therein. Thus viewed, the complaint served to put defendant on notice that Mrs. McLoughlin's status as a witness may well have been imparted because of her status as a participant in the occurrence. Under these circumstances, Mrs. McLoughlin should not be penalized for failing to specifically assert a claim for recovery based upon physical contact with the falling bricks. Despite the information given in the bill of particulars relating to Mrs. McLoughlin's physical ailments and confinement as sequela of the severe emotional and mental trauma suffered, defendant awaited the eve of trial with the apparent expectation that through astute utilization of *Tobin v Grossman,* it could effectively nonsuit this plaintiff. Such a result may not be countenanced on this record.

Confronted with the trial court's rulings striking the fourth cause of action (McLoughlin action) and refusing to allow amendment of said cause, the McLoughlins' counsel made an offer of proof not in the jury's presence to the effect that Mrs. McLoughlin, since the events of May 10, 1970, was on a prescription of tranquilizers, distraught, disoriented, constantly apprehensive of things falling upon her from the sky; that she walked on the curbline of sidewalks, and finally that she compelled her husband to reconstruct their own home although there was nothing wrong with the brickwork. Further, an offer of proof was made to the effect that Dr. Jerre B. Faison, the physician treating Mrs. McLoughlin for her emotional trauma, would have testified that the accident of May 10, 1970 was the competent producing cause of her emotional and psychological traumas and fears. Parenthetically, it is noted that the McLoughlins' counsel in his brief asserts that defendant Buhre Avenue Co. Inc.'s counsel received Dr. Faison's report prior to filing of the note of issue but that said defendant opted not to conduct any examination before trial of Mrs. McLoughlin and decided to forego a physical examination of her as well.

At this point it should be remembered that *Tobin v Grossman* enunciated a policy determination with respect to substantive law, to wit, that "no cause of action lies for *unin-*

*tended* harm sustained by one, *solely* as a result of injuries inflicted directly upon another, regardless of the relationship and whether the one was an eyewitness to the incident which resulted in the direct injuries" *(Tobin v Grossman, supra,* p 611; emphasis supplied). The zone of danger rule was regarded as "(q)uite relevant" to the probelm of allowing recovery to an eyewitness. Peculiarly, although *Tobin v Grossman* was decided on the pleading alone, which pleading alleged psychic injury from the fact that a mother witnessed an accident to her child, the Court of Appeals was cognizant of the fact as developed in an examination before trial that the mother involved did not in fact witness the accident. Of further relevance is the *ad hoc* nature of the evolutionary expanding concept of liability in the negligence area. Since *Tobin v Grossman,* for example, the Court of Appeals had occasion to enunciate the liberal and reasonable reform in tort law of "apportionment of responsibility" between joint tort-feasors *(Dole v Dow Chem. Co.,* 30 NY2d 143). The doctrine of this landmark case constituted a reform which was most recently embraced within the new comparative negligence statute (CPLR art 14-A, 1411 *et seq.).* Indeed, under CPLR 1411, the doctrine of pure comparative negligence is now adopted, permitting plaintiffs who are contributorily negligent to receive proportionately diminished recoveries.

Patently, the harm to Mary Ann McLoughlin was direct. The corporate defendant cannot reasonably claim surprise nor that it was misled. Essential justice mandates affording this litigant her day in court.

With respect to the jury awards unmodified by the trial court and with respect to the trial court's modification, study of the record supports the amounts of damages thus fixed, with one exception. The jury award in the amount of $75,000 for the wrongful death of Margaret Shanahan was excessive and should be reduced to $60,000, which amount finds warrant in the record.

Accordingly, the judgment of the Supreme Court, Bronx County (KRAF, J.), entered May 7, 1975, after a jury trial, should be modified to the extent of reversing, on the law, the dismissal of the cause of action of plaintiff Mary Ann McLoughlin, said cause of action should be reinstated and a new trial granted thereon, without costs and without disbursements; further, the judgment should be modified, on the law and the facts, so as to grant a new trial to defendants-appel-

lants as against Edmund Shanahan, as administrator of the estate of Margaret Shanahan, solely on the issue of damages with respect to the wrongful death claim of said administrator, unless he, within 20 days of service upon him by the defendants-appellants of a copy of the order entered herein, with notice of entry, serves and files in the office of the Clerk of the Supreme Court, Bronx County, a written stipulation consenting to reduce the verdict in his favor on the wrongful death claims to $60,000 and to the entry of an amended judgment in accordance therewith. Except as so modified above, the judgment should be affirmed without costs and disbursements. If Edmund Shanahan, as administrator, consents to the reduction, the judgment as so amended and reduced and as otherwise modified, should be affirmed.

NUNEZ, J. (dissenting in part). I concur with the majority except as to the reinstatement of Mary Ann McLouglin's cause of action. In her complaint she alleged that she "was a witness [to the accident to her son and mother] and suffered severe emotional and mental trauma and anxiety and grief". In her bill of particulars her only claim is "severe emotional and mental trauma and anxiety, grief, insomnia and loss of weight resulting in viral pneumonia." There is not one word in either her complaint or her bill of particulars that she was struck by any object or that she sustained any physical injury as a result of this unfortunate accident. And while she undoubtedly suffered the severest emotional and mental trauma imaginable, I feel that I have no choice but to vote to sustain the dismissal of her cause on the authority of *Tobin v Grossman* (24 NY2d 609).

KUPFERMAN, J. P., and MURPHY J., concur with LUPIANO, J.; LANE and NUNEZ, JJ., dissent in part in an opinion by NUNEZ, J.

Judgment, Supreme Court, Bronx County, entered on May 7, 1975, modified to the extent of reversing, on the law, the dismissal of the cause of action of plaintiff Mary Ann McLoughlin, reinstating said cause of action and granting a new trial thereon, without costs and without disbursements, and further modified, on the law and the facts, so as to grant a new trial to defendants-appellants as against Edmund Shanahan, as administrator of the estate of Margaret Shanahan, solely on the issue of damages with respect to the wrongful death claim of said administrator, unless he, within 20 days of

service upon him by the defendants-appellants of a copy of the order herein, with notice of entry, serves and files in the office of the Clerk of the Supreme Court, Bronx County, a written stipulation consenting to reduce the verdict in his favor on the wrongful death claims to $60,000 and to the entry of an amended judgment in accordance therewith. Except as so modified the judgment is affirmed, without costs and without disbursements. If Edmund Shanahan, as administrator, consents to the reduction, the judgment as so amended and reduced and as otherwise modified, is affirmed, without costs and without disbursements.