**DARLENE TROMBETTA**, Respondent, v **FRED J. CONKLING** et al., Appellants.

Fourth Department, February 5, 1993

**APPEARANCES OF COUNSEL**

*Petrone & Petrone,* Utica *(James P. Godemann* of counsel), for appellants.

*Louis T. Brindisi* and *Anthony A. Murad,* Utica, for respondent.

**OPINION OF THE COURT**

Doerr, J.

On November 10, 1989, at about 4:45 P.M., plaintiff, Darlene Trombetta, and her aunt, 59-year-old Phyllis Fisher, were crossing Wurz Avenue in the City of Utica. They were walking in the painted crosswalk and were about halfway across the street when plaintiff saw a tractor-trailer truck, driven by defendant Fred J. Conkling and owned by defendant Universal Waste, Inc., coming toward them. Realizing that the truck was not going to stop, plaintiff yelled and tried to pull her aunt out of the way. Tragically, plaintiff's efforts were in vain. Plaintiff watched the wheels of the tractor-trailer run over her aunt, killing her. Plaintiff was not injured.

Plaintiff commenced this action, seeking to recover damages for the emotional shock and trauma she suffered upon witnessing her aunt's death. Defendants asserted in their answer the affirmative defense that the complaint failed to state a cause of action and, following discovery, moved to dismiss plaintiff's complaint. Defendants conceded that plaintiff was in the "zone of danger" at the time her aunt was struck and killed, but argued that plaintiff could not recover for her emotional distress because her aunt was not a member of plaintiff's immediate family.

In opposition to defendants' motion to dismiss the complaint, plaintiff submitted her own affidavits and EBT testimony wherein she explained that, since the death of plaintiff's mother when plaintiff was only 11 years old, Fisher, her mother's only sister, had been like a mother to her. Fisher had helped to raise plaintiff and the two shared a very close relationship. Although they did not live in the same home, they saw each other on a daily basis. According to plaintiff, Fisher was the closest person in her life.

Supreme Court denied defendants' motion to dismiss the complaint, noting that the Court of Appeals, in *Bovsun v Sanperi* (61 NY2d 219), had not defined the limits of the "immediate family". Supreme Court concluded that a plaintiff

who is in the zone of danger and who suffers emotional injury from witnessing the death or injury of someone with whom he or she has an " 'intimate familial relationship' " (154 Misc 2d 844, 847) can recover damages under the zone of danger exception enunciated in *Bovsun v Sanperi (supra)*. We disagree.

In New York, bystanders, in the absence of physical injury to themselves, generally cannot recover for the emotional distress caused by witnessing the injury or death of a third party *(see, Tobin v Grossman,* 24 NY2d 609; *Casale v Unipunch, Inc.,* 177 AD2d 1029). In *Bovsun v Sanperi (supra,* at 228), a divided Court of Appeals recognized a limited exception to the general rule, to allow "one who is himself or herself threatened with bodily harm in consequence of the defendant's negligence to recover for emotional distress resulting from viewing the death or serious physical injury of a member of his or her immediate family". Because the plaintiffs in *Bovsun* and its companion case were either married to, the children of, or the parents of the injured or deceased person, the Court of Appeals found it unnecessary to set the outer limits of " 'the immediate family' " *(Bovsun v Sanperi, supra,* at 233, n 13). In this case of first impression, we are asked to determine whether plaintiff's aunt, with whom plaintiff did not reside, is within those outer limits. We conclude that she is not.

Plaintiff urges this Court to adopt the holdings of the highest courts in both Nebraska and Hawaii that a plaintiff should be allowed to prove the nature of his or her relationship with the deceased or injured person *(see, Leong v Takasaki,* 55 Haw 398, 520 P2d 758; *James v Lieb,* 221 Neb 47, 375 NW2d 109). We decline to adopt that rule. In our view, conditioning defendants' liability upon plaintiff's being able to prove that he or she shared a "strong bond" with the deceased or injured person would unreasonably extend the limits of defendants' duty *(see, Elden v Sheldon,* 46 Cal 3d 267, 758 P2d 582; *see also, Tobin v Grossman, supra,* at 616-617). Moreover, such a rule would give rise to difficult proof problems and the danger of fictitious claims.

We agree with the conclusion of the Supreme Court of California in *Elden v Sheldon (supra)* that bright line limits need to be drawn in the area of bystander recovery *(see also, Thing v La Chusa,* 48 Cal 3d 644, 668, n 10, 771 P2d 814, 830). As the Court of Appeals noted in *Tobin v Grossman (supra,* at 619), "[e]very injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law

is to limit the legal consequences of wrongs to a controllable degree." Although "[t]he temptation to give legal effect to close emotional ties between unrelated or distantly related persons is often strong" *(Elden v Sheldon,* 46 Cal 3d, *supra,* at 277, 758 P2d, *supra,* at 588), we resist the temptation to extend recovery to those persons with whom plaintiff had or has the " 'functional and emotional equivalent' of a nuclear family" *(Elden v Sheldon,* 46 Cal 3d, *supra,* at 277, 758 P2d, *supra,* at 588; *see also, Capolupo v Trustees of Columbia Univ.,* NYLJ, Sept. 1, 1992, at 22, col 4).

Accordingly, the order should be reversed, defendants' motion granted, and plaintiff's complaint dismissed.

CALLAHAN, J. P., GREEN, LAWTON and BOEHM, JJ., concur.

Order unanimously reversed, on the law, without costs, motion granted, and complaint dismissed.