In re AIR CRASH DISASTER AT COVE NECK, LONG ISLAND, NEW YORK ON JANUARY 25, 1990.

Samuel TISSENBAUM and Nettie Tissenbaum, Plaintiffs,

v.

AEROVIAS NACIONALES DE COLOMBIA, S.A., doing business as Avianca Airlines, Defendant.

No. 90 CV 2354 (TCP).

United States District Court, E.D. New York.

March 28, 1995.

Marc S. Moller and Blanca Rodriguez, Kreindler & Kreindler, New York City, for plaintiffs Tissenbaum.

Michael Holland, Condon & Forsyth, New York City, for defendant Avianca Airlines.

## MEMORANDUM and ORDER

PLATT, Chief Judge.

Plaintiffs seek to recover from Aerovias Nacionales De Columbia ("AVIANCA") for the negligent infliction of emotional distress allegedly caused when AVIANCA Flight 052 crashed into the plaintiffs' property and for the property damage sustained by the crash. Defendant moves for summary judgment pursuant to Fed.R.Civ.P. 56 on the grounds that New York law does not allow recovery for purely emotional distress injuries, negligently inflicted, under the facts set forth in this case and that plaintiffs have already recovered for the property damage from Aetna Casualty and Surety Company ("Aetna"), their home insurer.

This Court partially grants defendant's motion for summary judgment. Summary judgment is granted in favor of the defendants on the emotional injury issue as plaintiffs failed to provide evidence that the defendant owed them a direct duty of care, that the defendant breached that duty, and that the breach was the cause of their injuries. Additionally, plaintiffs' alternative tortious theory of intentional trespass does not preserve their personal injury claims. This Court denies summary judgment on the issue of the property damage claims to the extent plaintiffs seek to recover for uninsured losses.

## BACKGROUND:

### I. FACTS:

On January 25, 1990, Avianca Airlines Flight 052, a Boeing 707 aircraft, crashed in the Village of Cove Neck, Nassau County, New York, killing sixty five passengers and eight crew members, and injuring eighty four passengers and one crew member. As the plane crashed into a residential neighborhood, injuries were sustained by non-passengers who were on the ground at the time of the accident.

Samuel and Nettie Tissenbaum, husband and wife,[1] were in their home located at 16 Tennis Court Road, Cove Neck, New York, at about 9:25 pm on January 25, 1990, when Avianca Flight 052 crashed into their backyard. At the time of the crash, Nettie Tissenbaum, who was seventy one years old, was in the shower and Samuel Tissenbaum, who was seventy six years old, was watching TV in a nearby room. At the moment of impact, Mrs. Tissenbaum heard what she thought was a "tremendous clap of thunder," felt the house shake and realized the power was out. *See* Deposition of Nettie Tissenbaum, August 21, 1991 at 13, Exhibit F to Holland Affidavit (hereinafter N.T. dep.). Mr. Tissenbaum thought an earthquake had occurred. *See* Deposition of Samuel Tissenbaum, August 21, 1991 at 94, 97, Exhibit F to Holland Affidavit (hereinafter S.T. dep.).

Upon hearing the loud noise, Nettie Tissenbaum ran out of the shower and into the room where her husband was. N.T. dep. at 14–16. Plaintiffs procured flashlights and went downstairs to see what had caused the loud noise and power outage. As they walked down the stairs, plaintiffs began to hear "weird" noises, "like animals caught in a trap," coming from the back of the house. S.T. dep., p. 94; N.T. dep. p. 17. When they arrived downstairs, Mr. Tissenbaum shone the flashlight through the glassdoors leading to their deck and plaintiffs were shocked to see that a plane had crashed into the deck and backyard. N.T. dep. at 19; S.T. dep. at 95.

Upon realizing the tragic situation, plaintiffs went back inside to call for emergency help but the phone was dead. Mr. Tissenbaum ran to his car to drive to the nearby police station when a neighbor told him help was on the way. S.T. dep. at 95.

When the firefighters first arrived they sprayed the deck with a chemical foam to protect it from any possible fire damage if there were a post-crash explosion. N.T. dep. at 23, 26. After securing the house against possible fire damage, rescue workers were in and out of the Tissenbaum household all night asking for water, using the bathrooms, and borrowing their linens and tools. N.T. dep. at 24–26; S.T. dep. at 103–104. The Tissenbaum garage became in effect "command central." Curious observers also entered the Tissenbaum property all through the night. S.T. dep. at 101.

The evacuation of the passengers finally ended at about 6:00 a.m. The dead bodies were placed on the Tissenbaums' driveway and in their garage. N.T. dep. at 29; S.T. dep. at 102. For days plaintiffs had no electricity, telephone service or running water, N.T. dep. at 29, and they could not leave their home as rescue vehicles blocked their passage. S.T. dep. at 103. For weeks the wreckage of the plane and heavy equipment remained on their property. N.T. dep. at 32–33.

## II. CLAIMS:

### A. Claims for Personal Injury

Plaintiffs contend that from the moment they heard the loud noise and throughout the ordeal that followed they were in great fear for their safety. Mrs. Tissenbaum claims she still suffers from great anxiety, fearfulness, phobias, premonitions of disaster, disorientation and depression, N.T. dep. at 31–32, and that her pre-existing diabetes condition was exacerbated by the accident so that it is difficult to stabilize her blood sugar levels and weight.[2] N.T. dep. at 80, 86–87. Allegedly, the crash caused Mr. Tissenbaum to suffer from anxiety, depression, insomnia and increased angina pains affecting his ability to perform routine tasks.[3] S.T. dep. at 126–27. Neither plaintiff suffered any direct physical injuries from the plane crash.

Plaintiffs sought psychiatric treatment from Carl Saviano, M.D. to help them cope with the emotional stress caused by the accident. According to Dr. Saviano, Mr. and Mrs. Tissenbaum suffered from post-traumatic stress disorder resulting from the Avi-

---

**1.** Samuel Tissenbaum passed away on September 22, 1993.

**2.** Nettie Tissenbaum had been a diabetic for approximately twenty years prior to the accident.

**3.** Mr. Tissenbaum had suffered three heart attacks prior to the time of the accident. S.T. dep. at 104, 138–144.

anca plane crash from the date of the accident through and beyond February, 1991, the date they ended their psychiatric treatment. *See* Affidavit of Carl Saviano, August 2, 1994, Exhibit 10 to B. Rodriguez affidavit.

In light of the stress and emotional harm plaintiffs suffered as a result of this plane crash, plaintiffs seek personal injury damages on the theories that defendant committed negligent infliction of emotional distress, and intentional trespass.

### B. Property Damage Claim

The Tissenbaums submitted a claim for property damage to Aetna, their homeowner's insurer, and received $58,037.00 for the insured property damage they sustained. Plaintiffs claim that their insurance did not adequately compensate them as they sustained $152,926.00 in actual property damages. Additionally, the submitted claim did not include recovery for uninsured losses of interference with use of and enjoyment of their property.

At the time of the insurance settlement, the plaintiffs signed a subrogation statement in favor of Aetna but not a release. Aetna settled its subrogation claim with Avianca for $40,000 and released Avianca expressly for the subrogation claim only, but not for any claims made by plaintiffs for personal injury or uninsured losses resulting from the Avianca crash.

At the time of the accident, plaintiffs' home was for sale and they were receiving offers for approximately $700,000. In late 1989, after the crash, they sold the house in an "as is" condition for $575,000.

## DISCUSSION

### I. *Summary Judgment Standard:*

■ A motion for summary judgment may be granted if the pleadings, admissions and affidavits read together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is to be entered against a party "who fails to make a showing

4. New York State law applies in this case.

sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The court considers the evidence before it in the light most favorable to the non moving party.

### II. *Negligent Infliction of Emotional Distress:*

#### A. Legal Standard

■ The New York State Court of Appeals[4] has permitted plaintiffs to recover in cases of purely emotional injury in extremely limited circumstances [*Lancellotti v. Howard*, 155 A.D.2d 588, 547 N.Y.S.2d 654, 655 (2d Dep't.1989)] in which (1) a "bystander" who was in the "zone of danger" suffers emotional trauma as a result of their observations or (2) the defendant breaches a direct duty to plaintiff which results in emotional injury to the plaintiff. New York State is reluctant to extend the boundaries of the narrowly drawn rules for recovery of negligent infliction of emotional distress. *See Bravman v. Baxter Healthcare Corp.*, 794 F.Supp. 96, 100 (S.D.N.Y.1992), *aff'd in part, rev'd in part on other grounds, remanded*, 984 F.2d 71 (2nd Cir.1993), *remanded*, 842 F.Supp. 747 (S.D.N.Y.1994).

#### B. Bystander Rule

■ According to New York common law, damages for purely emotional injury are recoverable when the plaintiff is threatened with bodily harm as a result of defendant's negligence and the plaintiff suffers emotional injury "from viewing the death or serious physical injury of a member of his or her immediate family." *Bovsun v. Sanperi*, 61 N.Y.2d 219, 473 N.Y.S.2d 357, 361, 461 N.E.2d 843, 847 (N.Y.1984). Plaintiffs concede they cannot recover pursuant to the bystander rule as no member of their immediate family was injured in the accident.

#### C. Direct Duty Cases

■ New York State recognizes claims for negligent infliction of emotional distress in instances in which the plaintiff's emotional

injury results from "a breach of duty which 'unreasonably (endangers) the plaintiff's physical safety.'" *Wilson v. Consolidated Rail Corp.*, 810 F.Supp. 411, 416 (N.D.N.Y. 1993) (quoting *Green v. Leibowitz*, 118 A.D.2d 756, 500 N.Y.S.2d 146 (2d Dept.1986), *reh'g. denied*, 815 F.Supp. 585 (N.D.N.Y. 1993). A prerequisite to recovering for a claim of emotional injury is the existence of a duty owed directly to the claimant by one from whom recovery is sought. *Lahann v. Cravotta*, 228 N.Y.S.2d 371, 372–3 (1962); *see, Battalla v. State of New York*, 10 N.Y.2d 237, 219 N.Y.S.2d 34, 35–37, 176 N.E.2d 729, 730 (1961).

The gravamen of this claim is whether the plaintiffs can prove the defendant owed them a specific duty, rather than just a general duty to society. *See, Johnson v. Jamaica Hospital*, 62 N.Y.2d 523, 478 N.Y.S.2d 838, 839–40, 467 N.E.2d 502, 503 (1984). As this Court contemplates the duty airlines owe non-passengers, it must take into account that New York law narrowly defines the scope of an alleged tortfeasor's duty in order to ensure that "'the legal consequences of wrongs [are limited] to a controllable degree.'" *Waters v. New York City Housing*, 69 N.Y.2d 225, 513 N.Y.S.2d 356, 358, 505 N.E.2d 922, 924 (1987) (quoting *Tobin v. Grossman*, 24 N.Y.2d 609, 301 N.Y.S.2d 554, 561, 249 N.E.2d 419, 424 (1969)).

Plaintiffs contend that Avianca owed them a direct duty to operate its aircraft in a manner which would not cause harm to non passengers or their property. Defendant contends that it did not owe a direct duty to the Tissenbaums as they were merely bystanders to this accident who unfortunately were in the vicinity of the accident site and witnessed the aftermath of the collision.

In the New York cases in which defendant owes a direct duty to plaintiff for the purposes of collecting purely emotional damages the parties share a relationship analogous to an implied contractual relationship. For example, an infant plaintiff recovered for purely emotional damages against a state-owned ski resort when a negligent employee placed the child in a chair lift without securing the child's safety belt and the child suffered emotional trauma. *Battalla v. State of New*

*York*, 219 N.Y.S.2d at 35–37, 176 N.E.2d at 730. In that instance, there was an implied understanding between the parties that the State would ensure the chair lift was operated safely and that understanding provided the basis of the State's liability. *Id.* Parent plaintiffs were denied damages for purely emotional damages when there four and one-half (4½) month old infant was kidnapped from the defendant hospital. *Johnson v. Jamaica Hospital*, 478 N.Y.S.2d at 839–41, 467 N.E.2d at 503–4. The court held the parents were not entitled to recover as the hospital's duty ran to the infant patient, the party with which the hospital had an implicit contractual relationship, and not to the parents. *Id.*

This Court views the Tissenbaums' situation as analogous to the parents in *Jamaica Hospital*, and not the infant plaintiff in *Battalla*. The Tissenbaums are similar to the parent plaintiffs in that they undoubtedly suffered emotional injury resulting from the tortious activity at issue, but they are not in the kind of implied contractual relationship required to recover for negligently inflicted emotional distress. Unlike the infant plaintiff in *Battalla* and the infant patient in *Jamaica*, the Tissenbaums never placed themselves in the care of Avianca prior to the accident. It is the passengers on the airplane who share the type of relationship necessary to recover emotional damages, not the people on the ground who had the unfortunate experience of being in the wrong place at the wrong time.

To support the proposition that passenger airlines owe a direct duty to non-passengers on the ground below the plane's flight path, plaintiffs cite *Rehm v. United States*, 196 F.Supp. 428 (E.D.N.Y.1961). In that case, a plane operated by agents of the United States collided with an automobile driven by the plaintiffs, husband and wife, when the aircraft was forced to make an emergency landing on the Southern State Parkway. *Id.* at 429. During the course of the accident, plaintiffs witnessed the crash as it occurred, and suffered physical and emotional injuries. *Id.* at 430–31. The Court allowed the plaintiffs to recover for their physical and emotional harms. *Id.* at 431.

The *Rehm* case differs dramatically from the case at issue, as it was not a case for purely emotional damages. If the Tissenbaums had suffered physical and emotional injury, as the plaintiffs in *Rehm* did, there would be no question as to the viability of their tort claims against Avianca. Additionally, the plaintiffs in *Rehm* had a stronger case for recovery because they witnessed the accident as it occurred, while the Tissenbaum's injuries emanate from witnessing the aftermath of the collision. *See Battalla* 219 N.Y.S.2d 34, 176 N.E.2d 729 (plaintiff's awareness of the possible harm and dangerous incident were simultaneous); *see also Shanahan v. Orenstein,* 52 A.D.2d 164, 383 N.Y.S.2d 327 (1st Dep't.1976) (plaintiff was permitted to recover for negligently inflicted emotional injuries where she was a participant in the accident), *appeal dismissed,* 40 N.Y.2d 985, 390 N.Y.S.2d 927, 359 N.E.2d 435 (1976).

### D. Outrageous Conduct

■ Additionally, plaintiffs set forth an infliction of emotional distress claim based on the outrageousness of the events in this case. To maintain such a claim there must be a genuine issue of fact as to whether defendant "who by extreme and outrageous conduct causes severe emotional distress to (plaintiff) is subject to liability for such emotional distress." *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983), *rev'd on other grounds,* 136 A.D.2d 229, 527 N.Y.S.2d 1 (1st Dep't.1988). Liability exists when " 'the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as so atrocious, and utterly intolerable in a civilized community.' " *Id.* (citing Restatement of Torts, Second § 46(1), comment (d)). Avianca's actions with regards to this tragic accident do not rise to the level extreme and reckless conduct necessary to maintain a claim for emotional damages based on outrageous conduct.

This Court recognizes that Avianca owed its passengers and crew a direct duty to provide them with safe passage from Columbia to New York. This Court is not pre-

pared to extend Avianca's direct duty to all the non-passengers it's planes fly over on a daily basis. To hold airlines responsible for the possible emotional injury for such a large and indeterminate group of people would be to expose airlines to "virtually limitless … tort liability" and to create untold economic and social burdens. *Bacon v. Mussaw,* 167 A.D.2d 741, 563 N.Y.S.2d 854, 856 (3d Dep't. 1990).

### III. Tort of Trespass

■ The tort of trespass is the intentional and unlawful invasion of another's land. To meet the intent requirement the tortfeasor "need not intend or expect the damaging consequences of his intrusion," rather he need only "intend the act which amounts to or produces the unlawful invasion, and the intrusion must be … the immediate or inevitable consequence of what … he does so negligently as to amount to wilfulness." *Phillips v. Sun Oil Co.,* 307 N.Y. 328, 121 N.E.2d 249, 250 (1954).

Plaintiffs maintain that their complaint sets forth a prima facie case for the intentional tort of trespass: to wit, that the Avianca flight # 052 crashed onto plaintiffs' property and that the crash was the result of defendant's knowing, reckless and willful misconduct in exhausting its fuel supply so as to inevitably result in a crash. Defendant's response is that no evidence was adduced that suggests Avianca acted with deliberate disregard for life and that the crew of Flight 052 intentionally grounded the plane into the plaintiff's property.

■ This Court holds that there is no genuine issue of fact to support a claim for the tort of intentional trespass as there is no evidence to prove the necessary intent to invade unlawfully. There was never a legal finding in this case that Avianca acted in a manner which rose to the level of wilful misconduct in the invasion of property or that the crew in this case, all of whom perished but one, voluntarily crashed the flight into the plaintiffs' yard. Rather, when the plane ran out of gas, after holding over the airport for hours, it became impossible for any human being to act voluntarily and control the aircraft and it unfortunately and

accidentally crashed into the Tissenbaum's yard.

## IV. *Property Damage Claims*

Plaintiffs contend that whether their property damages are measured by the cost to restore the property to its original condition or by the diminution in the market value of their property the $58,037.00 they received from Aetna did not compensate them adequately for the damage to their property.[5] Plaintiffs' total claim for property damage, supported by consultant's estimates for repair and restoration, was $152,926.00.[6] (Exh. 1, Affidavit of Blanca Rodriguez, Esq.) Alternatively, plaintiffs claim that if damages are measured by the diminution of the property value they were undercompensated because before the accident someone offered $725,000.00 to purchase their home and after the crash it sold for $575,000.00. Plaintiffs seek to recover from defendants either the difference between the amount paid by the insurer and the amount they claim is due them, or the difference in the pre and post accident amounts offered for the sale of their home. Additionally, plaintiffs seek to recover for the interference with their normal use and enjoyment of the property, which was not covered by their homeowner's policy.

Defendant contends the plaintiffs' claim for property damage should be dismissed because in June, 1990, plaintiffs recovered $58,037 from their insurer and then assigned their rights to Aetna to recover from Avianca for the monies paid to plaintiff from Aetna. Ultimately, Aetna and Avianca entered a settlement agreement for the monies paid from Aetna to the plaintiffs whereby Avianca paid Aetna $40,000 for the property damage and Aetna released Avianca in the settlement of its subrogated claims only.[7]

The extent of an insurer's liability to the insured "does not delineate absolutely the extent of the legal liability of a tortfeasor to the insured." 6A JOHN ALAN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW and PRACTICE § 4103 (1972). The fact that the insured plaintiffs assigned their rights to recover from Avianca for property damage to their insurance carrier does not affect plaintiffs' status as real parties in interest and therefore does not affect their ability to pursue a claim against the tortfeasor. CPLR § 1004[8]; *Feeter v. Van Scott Bros., Inc.*, 74 Misc.2d 388, 345 N.Y.S.2d 374, 375–76 (Sup.1973) (Where approximately 12% of fire loss was uninsured, insureds, who had executed a "loan receipt" (or subrogation receipt) in favor of the insurer in consideration of receipt of $43,500 under home owner's policy, could maintain claims against the tortfeasor in their own names, for the amount paid by the insurer and for their uninsured loss.).

---

**5.** Defendant argues that plaintiffs are seeking to recover for both diminution of property value and cost to restore, which is not permissible under New York law. *See, Benavie v. Baker*, 72 A.D.2d 541, 420 N.Y.S.2d 735, 736 (2d Dep't. 1979). This Court disagrees with defendant's interpretation of plaintiffs' papers. It appears plaintiff is stating whichever method is used to measure damages they have thus far been undercompensated and that they would be satisfied to recover fully under either formula.

**6.** The following are estimates to repair plaintiffs' property damage caused by the crash of Avianca # 052:

  1. Electrical—$997.00 plus tax,
  2. Driveway—$12,210.00 plus tax,
  3. Redwood Deck—$23,140.00 plus tax,
  4. Landscape Damages:
    a. Area A—$104,100.00 + 23,000 for trees.
    b. Area B—$8,198.00
    c. Area C—$2,756.00
  5. Miscellaneous Carpentry Repairs—$925.00.

The estimates for items 1–4 were prepared by Dodds & Eder, Inc., 221 South Street, P.O. Box 150, Oyster Bay, New York 11771. The estimates in item 5 were prepared by Richard C. Heinl, 92 Brixton Road South, West Hempstead, New York 11552.

**7.** The release states "This release is given by THE AETNA CASUALTY AND SURETY COMPANY in settlement of its subrogation claims only. It has no force or effect against those claims made by SAMUEL TISSENBAUM or other members of his family for personal injuries or uninsured losses arising from the Avianca Flight # 052 crash on January 25, 1990."

**8.** § 1004 When joinder unnecessary. Except where otherwise prescribed by order of court, ... a trustee of an express insured person who has executed to his insurer either a loan or **subrogation receipt**, ... or other similar agreement, ... may sue or be sued without joining with him the person for or against whose interest the action was brought.

To interpret the release given to Avianca by Aetna the Court is governed by the principles of contract law so that " "(w)here the language of a release is clear, effect must be given to the intent of the parties as indicated by the language employed.' " *Dury v. Dunadee,* 52 A.D.2d 206, 383 N.Y.S.2d 748, 750 (4th Dep't.1976) (quoting *Matter of Schaefer,* 18 N.Y.2d 314, 274 N.Y.S.2d 869, 872, 221 N.E.2d 538, 540 (1966)). If the language of an instrument limits the release to certain claims, "then the release will be operative as to those matters only." *Herman v. Malamed,* 110 A.D.2d 575, 487 N.Y.S.2d 791, 793 (1st Dep't.1985) (citing *Lanni v. Smith,* 89 A.D.2d 782, 453 N.Y.S.2d 497 (4th Dep't.1982), *appeal withdrawn,* 65 N.Y.2d 925 (1985)).

The fact that plaintiffs recovered from Aetna and subrogated to Aetna the right to sue the tortfeasor for recovery of Aetna's insurance payment does not destroy plaintiffs' status as real parties in interest or preclude plaintiffs from bringing claims for uninsured losses against the tortfeasor. The release between Aetna and Avianca states that it is for the subrogated claims only and that it does not release Avianca from its responsibility for claims by the plaintiffs for personal injury and uninsured claims. This Court is bound to abide by the specific release language. In accordance with New York law, this Court holds that to the extent the plaintiffs are seeking recovery for uninsured repair and restoration expenses or diminution of property value together with interference with the quiet enjoyment of their land those claims are valid and defendant's motion for summary judgement is denied.

## CONCLUSION

This Court sympathizes with the plaintiffs and believes they suffered emotional injury as a result of the tragic air disaster which ended up in their backyard. Nonetheless, summary judgment is granted in favor of the defendant on the issue of emotional damages as plaintiffs failed to establish the existence of an essential element of their case, specifically a direct duty running from the defendant airline to the plaintiffs. Additionally, this Court finds plaintiff, as a matter of law, may not maintain a claim of intentional trespass. Summary judgment is denied to the extent that the plaintiffs seek to bring claims against the tortfeasor to recover for uninsured losses which were never subrogated to Aetna.

SO ORDERED.