BRUCE DARRAH, an Infant, by HAROLD DARRAH, His Father and Guardian ad Litem, Appellant, *v.* WILLIAM C. KITE, JR., Respondent.

Third Department, June 18, 1969.

*John P. Judge* (*Charles S. Desmond* of counsel), for appellant.

*Martin, Clearwater & Bell* (*Donald J. Fager* and *Walter G. Alton, Jr.,* of counsel), for respondent.

HERLIHY, J. This is an appeal by the plaintiff from a judgment of the Supreme Court, entered February 29, 1968 in Clinton

County, upon jury verdicts of no cause for action and from an order of that court which denied plaintiff's motion to set aside the verdicts.

The appellant contends that the jury verdicts were against the weight of the evidence or, in the alternative, that a new trial should be had in the interests of justice. The judgment and order should be affirmed without costs as to the malpractice causes of action and reversed and remanded for a new trial on the informed consent cause of action.

The infant plaintiff suffered from convulsive seizures in the nature of those generally associated with epilepsy from the age of 5½ months. At nine years of age (September of 1957) the seizures became more frequent and his pediatrician recommended referral for specialized study. He was referred to the defendant, a neurosurgeon and specialist in the diagnosis and treatment of physical disorders related to or caused by some abnormality of the brain and/or its environment. The defendant examined the plaintiff and recommended hospitalization '' for a complete workup '' or '' routine brain tests ''. After hospitalization, the defendant performed various tests, the last of which was a ventriculogram. All of the tests performed were described by the expert witnesses as being standard diagnostic procedures although the ventriculogram involved the opening of the skull and penetration of the brain itself. It was also established that the ventriculogram was employed only when the other and preceding procedures resulted in inadequate illumination of the brain or its particular area under study. The results of the tests were negative as to any tumor or pressure causing the seizures of the plaintiff and he was discharged from the hospital on October 3, 1957. Shortly after this discharge the infant suffered a series of convulsions and was again hospitalized under the care of the defendant. On October 17, 1957, the defendant performed a craniotomy at the site of the skull previously opened for the ventriculogram procedure. The defendant removed a blood clot and necrotic brain, the blood clot having been caused by the ventriculogram procedure. The plaintiff had a substantial recovery until 1962 when his condition began to deteriorate. As of the time of the trial the infant was mentally and physically defective and was in the care of a State institution for the mentally retarded.

The plaintiff offered proof that the defendant had been negligent (malpractice) in several respects: (a) electing to perform the ventriculogram; (b) unnecessarily choosing to test the right side of the brain; (c) failing to promptly diagnose and treat the blood clot upon the second hospitalization (Oct. 9–17, 1957);

(d) improperly performing the craniotomy. As the Trial Justice pointed out in his opinion denying the motion to set aside the verdicts, the defendant offered substantial expert testimony that in 1957 a ventriculogram was a standard diagnostic test and that he had not been negligent in any of the foregoing matters. It appears that there were issues of fact for the jury as to negligence and the resolution thereof by the jury is not against the weight of the evidence. There was also evidence on behalf of the defendant that the present condition of the plaintiff was not substantially related to the blood clot and subsequent craniotomy. The trial court submitted a general question to the jury as to negligence (malpractice) and the plaintiff took no exceptions and made no requests. It should be noted, however, that where there are several possible acts of negligence and possibilities of limited as well as general damage flowing therefrom, it would no doubt better enable the jury to consider the case if special questions were submitted as to the negligent act and the possibilities of recoverable damage therefrom.

The plaintiff alleged in his complaint as a separate cause of action the failure of the defendant to obtain an informed consent before performing the procedure for the ventriculogram. Upon the present record it appears that in considering the theory upon which plaintiff presented his case and the charge of the court as without exceptions and objections, the verdict in favor of the defendant was not against the weight of the evidence.

It is the opinion of this court, however, that the Trial Judge improperly charged the jury with respect to this cause of action when he instructed them that "where the physician fails to make a disclosure the burden is still upon the plaintiff to prove that his failure to disclose was the proximate cause of any injury that he claims to be entitled to recover for", and "that the defendant is liable for the injuries or disabilities that the infant plaintiff received, that were proximately caused by the failure of the defendant to disclose".

It has long been settled in this State that a "surgeon who performs an operation without his patient's consent, commits an assault, for which he is liable in damages" (*Schloendorff* v. *New York Hosp.*, 211 N. Y. 125, 129–130), at least in the absence of an emergency. (See *McCandless* v. *State of New York*, 3 A D 2d 600, 606, affd. 4 N Y 2d 797.) Although the decision in *Schloendorff* was directed at a situation in which absolutely no consent had been obtained we are of the opinion that the rule is equally applicable to a situation where one has been given insufficient information upon which to formulate an intelligent consent. An uninformed or invalid consent is tantamount to no

consent at all (cf. *Birnbaum* v. *Siegler,* 273 App. Div. 817). An operation performed without an informed consent has been characterized as an " unauthorized operation ". (*Scott* v. *Kaye,* 24 A D 2d 890, 891.) In the present record there is undisputed testimony that consent to a ventriculogram should also include consent to a craniotomy, if necessary, and that the consent should include the nature of the procedure employed in a ventriculogram. As the trespass on the body arises from the unlawful touching itself there need be no showing of negligence or malice and the plaintiff is entitled to any damages which flow from the unauthorized procedure regardless of the fact that the operation was performed with the utmost of care. The damages related to the cause of action for uninformed consent arise not because the procedure was performed unsatisfactorily, but because it was performed at all. As was stated in the case of *Mohr* v. *Williams* (95 Minn. 261, 271), cited and relied upon by the Court of Appeals in deciding *Schloendorff*: " It would seem to follow from what has been said on the other features of the case that the act of the defendant amounted at least to a technical assault and battery. If the operation was performed without plaintiff's consent, and the circumstances were not such as to justify its performance without, it was wrongful; and, if it was wrongful, it was unlawful." The trial court, therefore, should have clearly instructed the jury that if they found that the defendant " had never explained sufficiently to the mother [father] the hazards of the operation, the available alternatives " (*Fiorentino* v. *Wenger,* 19 N Y 2d 407, 413) the plaintiff would be entitled to all damages causally related to the performance of the unauthorized procedure. It should be noted at this point that although the court charged that a written consent *given to the hospital* was a consent, the record at best established a question of fact for the jury as to whether or not any consent had been given for a ventriculogram. It further appears that the charge as given may have confused the jury as to the distinction between damages which are proximately caused and flow from negligence and damages which are proximately caused and flow from the performance of an unauthorized procedure, and that as a result of this confusion the jury may have been led to believe that the defendant was not liable at all unless the plaintiff could establish that the ultimate condition of the infant was brought about by the unauthorized operation. Upon the present record it is affirmatively established that none of the present physical and mental deficiencies of the plaintiff, resulting in his confinement to an institution, were related to the ventriculogram with the possible exception

that the loss of vision to the left eye, weakness on the left side and loss of position sense on the left side were related to the complications following the ventriculogram. There was ample evidence from which the jury could conclude that the boy's physical and mental condition from the time of the performance of the ventriculogram until his final discharge from the hospital in November of 1957 was a direct consequence of the ventriculogram. A more specific charge by the court as to the various options open to the jury as to resultant damages was necessary in order to assure a fair trial and a proper verdict. It would appear advisable as to this cause of action to submit specific questions to the jury in the event of a retrial. Therefore, although there was no objection to the charge by the plaintiff's attorney, which there should have been, we believe that the charge did not fully cover the cause of action presented and precluded a fair consideration of the issues by the jury. It appears that in fairness and justice a new trial is required upon the issue of an unauthorized operation (uninformed consent or nonconsent).

In weighing upon our determination to grant a new trial in the interests of justice the following matters should be observed. The plaintiff in this case is an infant and was an infant of nine years when the ventriculogram was performed and he cannot of his own knowledge establish a consent, if any, or the information given as to a consent. The father's testimony was positive as to not having knowledge that "burr" holes were to be put in the boy's head. The testimony of the defendant as a whole is strongly indicative that as a general proposition he discloses very little as to the nature of the procedures he is to employ or their inherent risks and while there might be justification for such a practice as to telling patients of the possible risks or dangers, there would seem no reason for not fully disclosing the nature of the procedures at least to a guardian or responsible third party, when surgical procedures are to be employed in the area of such a delicate organ as the brain. It is established in the present record that at the time the plaintiff was admitted to the hospital for "routine brain tests" or a general "workup", there was no contemplation of a ventriculogram by the doctor and accordingly, the written consent given by the father *to the hospital* and *charged* by the Trial Justice as being a consent in all probability was not a consent to a ventriculogram. Upon the present record there was little proof of any consent and at best it should have been a question of fact for the jury as to whether or not there was a consent given for a ventriculogram and this is particularly so, where as here,

there is testimony that specific permission is required for a ventriculogram.

The judgment should be modified, on the law and the facts, to the extent of reversing the dismissal of the fourth cause of action and a new trial directed thereon, and, as so modified, affirmed, with costs to plaintiff. The order should be modified, on the law and the facts, so as to grant plaintiff's motion to set aside the verdict in favor of defendant upon the fourth cause of action, without costs.

GIBSON, P. J., AULISI, STALEY, JR., and COOKE, JJ., concur.

Judgment modified, on the law and the facts, to the extent of reversing the dismissal of the fourth cause of action and directing a new trial thereon, and, as so modified, affirmed, with costs. Order modified, on the law and the facts, so as to grant plaintiff's motion to set aside the verdict in favor of defendant upon the fourth cause of action, without costs.