ARVIDS KARLSONS et al., Appellants, v GERARD T. GUERINOT et al., Respondents.

Fourth Department, April 15, 1977

*Robert F. Wood, P. C. (Michael Calvette* of counsel), for appellants.

*Martin, Ganotis, Amsler & Brown (George F. Mould* of counsel), for respondents.

MOULE, J. P. Plaintiffs parents and child appeal from a judgment dismissing certain of their causes of action against defendants, duly licensed physicians, for damages sustained as a result of the birth of the child.

According to the complaint on June 26, 1973 plaintiff, Irene Karlsons, retained the services of defendants as obstetrician and gynecologist to counsel and assist her by providing pre- and postnatal care. Although defendants were informed of her medical history, including the fact that she was 37 years old, had a thyroid condition and had previously given birth to a deformed child, they failed to inform and advise her and her husband of the risks involved in the pregnancy, particularly with regard to the likelihood of giving birth to another deformed child. Defendants also failed to inform her of the existence of an amniocentesis test which, when administered, could detect whether the fetus was in fact deformed. Plaintiffs further alleged that, had she been informed either of the risks of her pregnancy or of the fact that the fetus was deformed, she would not have consented to continuation of the pregnancy. Subsequently, on January 9, 1974 plaintiff gave birth to a mongoloid child.

In their complaint plaintiffs set forth 11 causes of action seeking damages based upon theories of negligence, malpractice, lack of informed consent, breach of contract and what has now come to be termed as "wrongful life". Plaintiff wife sought damages for pain, suffering and mental anguish incident to the delivery of the child and also that caused by the birth of their child in an impaired condition, for care and support of the child, for loss of potential income as a result of such care, for loss of consortium and for the development of cancer of the breast allegedly related to and caused by her emotional and physical stress. Plaintiff husband sought to recover medical expenses for services rendered to his wife and their child as well as damages for loss of the child's services, for expenses of care and support, for loss of consortium and for his pain and suffering and mental anguish as a result of the birth of their child in an impaired condition. Plaintiffs husband and wife also asserted a separate cause of action on behalf of their child seeking damages for pain and suffering, for the burden of living an impaired life and for the loss of ability to earn a living. Based upon these causes of action

plaintiffs sought $25,000,000 in compensatory damages and $2,000,000 in punitive damages.

After service of their answer, defendants jointly moved for summary judgment pursuant to CPLR 3212 upon the grounds that there was no triable issue of fact and no merit to the complaint. Special Term partially granted the motion, and judgment was entered dismissing the following causes of action: the claims of plaintiffs husband and wife for pain, suffering and mental anguish as a result of the birth of their child in an impaired condition; the claim for damages on behalf of the child as well as the husband's derivative claim for loss of his child's services; the claims based upon theories of lack of informed consent and breach of contract; the wife's claim for damages due to her development of cancer;[1] and the claim for punitive damges.

As their first contention plaintiffs urge that Special Term erred in dismissing their cause of action for pain, suffering and mental anguish as a result of the birth of their deformed child.

We held in *Ziemba v Sternberg* (45 AD2d 230, 231) that an action is maintainable by a parent against a physician for the negligent failure to diagnose a pregnancy such that the mother was prevented from aborting the child within a reasonable time (see, also, *Chapman v Schultz,* 47 AD2d 806). The question here, however, is not whether plaintiffs have properly alleged the necessary elements of a cause of action for negligence based upon medical malpractice, but whether, assuming they have alleged such cause of action, they can recover for pain, suffering and mental anguish as a result of the birth of their deformed child (see *Howard v Lecher,* 53 AD2d 420).

The Court of Appeals has addressed the question of under what circumstances recovery may be had for the negligent infliction of emotional harm. In *Tobin v Grossman* (24 NY2d 609) the court examined the viability of a mother's cause of action against a negligent driver for psychological and physical injury caused by the trauma of observing her infant child seriously injured in an automobile accident. While holding that one may have a cause of action for injuries sustained by a negligently induced mental trauma without physicial impact

---

1. The propriety of the dismissal of this cause of action, however, is not raised on appeal.

(24 NY2d, at p 613), the court dismissed the mother's cause of action upon public policy grounds stating (p 616): "The problem of unlimited liability is suggested by the unforseeable consequence of extending recovery for harm to others than those directly involved in the accident. If foreseeability be the sole test, then once liability is extended the logic of the principle would not and could not remain confined. It would extend to older children, fathers, grandparents, relatives, or others *in loco parentis,* and even to sensitive caretakers, or even any other affected bystanders. Moreover, in any one accident, there might well be more than one person indirectly but seriously affected by the shock of injury or death to the child".

Despite the barrier erected by the *Tobin* decision, the court in *Johnson v State of New York* (37 NY2d 378) permitted a plaintiff to maintain an action against the State for emotional harm allegedly caused by a State hospital's negligent transmittal of a telegram falsely informing plaintiff of her mother's death. In distinguishing its earlier decision in *Tobin,* the court reasoned that (p 383):

"Claimant was not indirectly harmed by injury caused to another; she was not a mere eyewitness of or bystander to injury caused to another. Instead, she was the one to whom a duty was directly owed by the hospital, and the one who was directly injured by the hospital's breach of that duty. Thus, the rationale underlying the *Tobin* case, namely, the real dangers of extending recovery for harm to others than those directly involved, is inapplicable to the instant case * * *

"Moreover, not only justice but logic compels the further conclusion that if claimant was entitled to recover her pecuniary losses she was also entitled to recover for the emotional harm caused by the same tortious act."

Here, Special Term's dismissal of plaintiff's cause of action was based solely upon the authority of the Second Department's recent decision in *Howard v Lecher*[2] (53 AD2d 420, *supra).* In that case, which involves a factual situation similar to the one here, the parents of an infant born with Tay-Sachs disease sought damages for mental distress and emotional disturbances suffered by them. They alleged, *inter alia,* that defendant obstetrician knew or should have known that being

2. The court in the *Howard* case was split 3 to 2, with a strong dissent in favor of maintaining the cause of action. The case has been appealed to the Court of Appeals but as of yet no date has been set for oral argument.

of Eastern European background they were potential carriers of the disease; that he was negligent either in failing to take a proper history of them or in evaluating the history that he did take; and that he should have informed them of certain tests which could have been administered to detect whether the fetus carried the disease. The court dismissed the parents' cause of action based upon its interpretation of the *Tobin* and *Johnson* decisions stating (p 423) that: "While in this case the defendant may or may not have treated the plaintiff wife, or advised her and the plaintiff husband according to accepted medical standards of his profession, the fact is that the injury from which their alleged emotional harm stemmed was suffered by the child."

Additionally, the court grounded its holding upon the conclusion that it is virtually impossible to evaluate as compensatory damages the anguish to the parents of rearing either a malformed child or a child born with a fatal disease, measured against the denial to them of the benefits of parenthood (53 AD2d, at p 424). We reject this approach however and find the cause of action here to be maintainable.

Defendants were under a duty to plaintiff wife to provide her with proper medical care during her pregnancy. They allegedly breached that duty by not properly diagnosing the condition of the child, thus precluding a decision to abort. As a result, the mongoloid child was born, creating the source of the parents' alleged emotional harm. We cannot agree with the conclusions of the Second Department in *Howard* that the injury from which the parents' alleged emotional harm stemmed was suffered solely by the child and, therefore, resulted in only indirect harm to the parents. Rather, the pain, suffering and mental anguish suffered by plaintiffs as a result of the birth of their mongoloid child is the type of *direct* injury flowing from defendants' alleged breach of duty to the parents that was contemplated by the Court of Appeals in *Johnson*. Additionally, the principal reason for denying recovery for emotional harm, viz., the possibility of numerous fictitious claims, is not present here (see *Tobin v Grossman,* 24 NY2d 609, *supra).* Inasmuch as plaintiffs' injuries were directly caused by defendants' alleged breach of duty, it follows that damages are recoverable for their resulting pain, suffering and mental anguish.

With respect to the issue of the ascertainability of plaintiffs' damages, difficulty in the estimation of a monetary value

should not constitute a barrier to plaintiffs' recovery (see *Story Parchment Co. v Paterson Co.,* 282 US 555). As we stated in *Ziemba v Sternberg (supra)* "the person responsible for the injury must respond for all damages resulting directly from and as a natural consequence of the wrongful act according to common experience and in the usual course of events" (45 AD2d, at p 231). Upon a sufficient demonstration of proof by plaintiffs with respect to the emotional and psychological harm which they have suffered, mitigated by any benefits that might accrue to them in rearing their child, the trier of fact can make a reasoned estimate of the damages sustained. Calculations of this nature are not alien to our judicial system and jurors are called upon to make similar determinations quite often.

Plaintiffs' second contention is that the court erred in dismissing the cause of action brought on behalf of the infant for damages resulting from her deformed birth. This cause of action, commonly referred to as one for "wrongful life", is grounded upon the premise that but for defendants' negligence plaintiffs would have aborted the pregnancy and the infant would not have been born and forced to suffer the pain and anguish of an existence in a deformed or disadvantaged condition.

Causes of action for "wrongful life" have consistently met with judicial disapproval not only in New York State but in other jurisdictions as well. (See *Williams v State of New York,* 18 NY2d 481; *Johnson v Yeshiva Univ.,* 53 AD2d 523; *Greenberg v Kliot,* 47 AD2d 765; *Stewart v Long Is. Coll. Hosp.,* 35 AD2d 531, affd 30 NY2d 695; *Gleitman v Cosgrove,* 49 NJ 22; *Zepeda v Zepeda,* 41 Ill App 2d 240, cert den 379 US 945; *Stills v Gratton,* 55 Cal App 3d 698; *Dumer v St. Michael's Hosp.,* 69 Wis 2d 766.)

The leading case in New York is *Williams v State of New York (supra)* wherein an illegitimate infant sought to recover damages for "wrongful life" based upon allegations that the State was negligent in failing to safeguard the infant's mother, a patient in a mental hospital, from a sexual assault, as a result of which plaintiff infant was conceived and later born. In rejecting the cause of action, the Court of Appeals noted (p 484) that the "[i]mpossibility of entertaining this suit comes not so much from difficulty in measuring the alleged 'damages' as from the absence from our legal concepts of any such idea as a 'wrong' to a later-born child caused by permit-

ting a woman to be violated and to bear an out-of-wedlock infant."

While admittedly *Williams* involved a question of illegitimate birth as opposed to birth with deformities, the rule espoused in that case, contrary to plaintiffs' argument, is equally applicable to the latter situation. The circumstance of either illegitimacy or deformity goes not to whether a cause of action exists but rather to the extent of the damages, if any, which may be recovered. Thus in both situations the "wrong" sought to be vindicated is the birth itself and not birth under one set of circumstances as opposed to another.

Nor is there any merit to plaintiffs' argument that due to the liberalization of the State abortion law the holding in *Williams* is no longer viable. While it is true that some of the pre-liberalization cases do refer tangentially to the fact that the fetus could not have been legally aborted (see, e.g., *Stewart v Long Is. Coll. Hosp.* (35 AD2d 531, affd 30 NY2d 695, supra), that alone was not, in our opinion, the basis for rejection of the claim. Rather it was, as stated in *Williams,* the fact that the birth itself was "not a suable wrong that is cognizable in court" *(Williams v State of New York, supra,* p 484). Thus post-liberalization cases can and do correctly refer to earlier decisions as authority for dismissal of the suit. (See *Johnson v Yeshiva Univ.,* 53 AD2d 523, *supra; Greenberg v Kliot,* 47 AD2d 765, *supra.)*

While we are in sympathy with the plight of the infant plaintiff in this case, judicial recognition of this cause of action is impossible. It is well settled that the existence of damages is an essential element of any action in tort, and, absent such damages, no suit will lie (see *Simon v Noma Elec. Corp.,* 293 NY 171). Since damages in a tort action are compensatory in nature, the existence of such damages is grounded in the premise that but for the negligence of the defendant, plaintiff would be in a better position than he is in today.

In the instant case, recognition of the infant's cause of action would necessitate a finding that she has been injured by defendants' negligence, i.e., that she has been placed in a worse position than she would have been in had defendants not been negligent.[3] Thus, the threshold question here is not

---

3. The existence of any injury or "damage" in a qualitative sense is an entirely different question from whether such damages may be properly measured in monetary figures. The latter is solely a question of fact for a jury and once damages are

whether life with deformities, however severe, is less preferable than death, but rather whether it is less preferable than the "utter void of nonexistence" *(Gleitman v Cosgrove,* 49 NJ 22, 28, *supra).* Such a decision, by the very nature of the concepts sought to be compared and their far-reaching implications, is beyond the scope of judicial decision-making and must await legislative action. (See *Johnson v Yeshiva Univ.,* 53 AD2d 523, *supra; Stewart v Long Is. Coll. Hosp.,* 35 AD2d 531, affd 30 NY2d 695, *supra.)*

Nor did the court err in also dismissing the father's claim for loss of services of the infant. It is well settled that "[a]n action by a parent to recover pecuniary loss sustained by reason of injuries inflicted upon his child is derivative in nature to the extent that it depends upon the right of the child to recover for his injuries *(Reilly v Rawleigh,* 245 App. Div. 190, 191). Such cause of action by a parent draws its life from the existence of the cause of action which inures to the benefit of the infant *(Georgetti v 29 Holding Corp.,* 31 N.Y.S. 2d 998, 1000)." *(Kotary v Spencer Speedway,* 47 AD2d 127, 129.) Since the court properly dismissed the infant's cause of action for "wrongful life", dismissal of the father's derivative action was required.

Plaintiffs' third contention is that Special Term erred in dismissing their cause of action based upon lack of informed consent. In particular, they urge that defendants' nondisclosure of the risk of giving birth to a deformed child supports a cause of action for failure to obtain an informed consent to continuation of the pregnancy and to the final delivery. We disagree.

In *Fogal v Genesee Hosp.* (41 AD2d 468, 473) we stated that: "Under New York law a physician may be liable for failure to obtain the informed consent of his patient to a surgical procedure *(Darrah v. Kite,* 32 A D 2d 208, 210-211; *Fiorentino v. Wenger,* 26 A D 2d 693, revd. on other grounds 19 N Y 2d 407, 413; *Di Rosse v. Wein,* 24 A D 2d 510). The cause of action is not based on any theory of negligence but is an offshoot of the law of assault and battery. Any nonconsensual touching of a patient's body, absent an emergency, is a battery and the theory is that an uninformed consent to surgery obtained from a patient lacking knowledge of the dangers

found to exist mere difficulties in estimating their extent and value would not bar recovery (see *Story Parchment Co. v Paterson Co.,* 282 US 555, *supra).*

inherent in the procedure is no consent at all. There must be 'a reasonable disclosure * * * of the known dangers * * * incident to' the proposed treatment *(Di Rosse v. Wein, supra)."* We expanded the doctrine of informed consent in *Fogal* to include those situations where the doctor failed to disclose not only the nature and character of the proposed treatment (see *Schloendorff v New York Hosp.,* 211 NY 125) but also the attendant risks.

Although this pronouncement of the scope of the doctrine seems broad on its face, its application has consistently been limited to those situations where the harm suffered arose from some affirmative violation of the patient's physical integrity such as surgical procedures, injections or invasive diagnostic tests (see *Garone v Roberts' Tech. & Trade School,* 47 AD2d 306; *Zeleznik v Jewish Chronic Disease Hosp.,* 47 AD2d 199; *Fogal v Genesee Hosp.,* 41 AD2d 468, *supra; Darrah v Kite,* 32 AD2d 208, *supra; Di Rosse v Wein,* 24 AD2d 510, *supra).* In those instances where there was nondisclosure of certain risks, the risks were directly related to the affirmative treatment and thus the consent to such treatment was vitiated.

Plaintiffs ask that we apply this doctrine under circumstances where defendants allegedly failed to inform them of the probability of giving birth to a deformed child, thus precluding them from exercising the option of ending the pregnancy through abortion. In particular, plaintiffs assert that defendants were derelict in the diagnosis of the wife's pregnancy by failing either to perform certain tests or to interpret properly her medical history.

As stated above, a cause of action based upon this theory of liability exists only where the injury suffered arises from an affirmative violation of the patient's phsyical integrity and, where nondisclosure of risks is concerned, these risks are directly related to such affirmative treatment. Here, the resultant harm did not arise out of any affirmative violation of the mother's physical integrity. Furthermore, the alleged undisclosed risks did not relate to any affirmative treatment but rather to the condition of pregnancy itself. Allegations such as these have traditionally formed the basis of actions in medical malpractice *(Ziemba v Sternberg,* 45 AD2d 230, *supra)* and not informed consent. Special Term's dismissal of this cause of action is therefore affirmed.[4]

---

4. This decision is also in accord with the Legislature's recent codification of a cause

As a fourth contention plaintiff wife asserts that Special Term erred in dismissing here cause of action based upon breach of contract without granting her leave to serve an amended complaint.

In *Liebler v Our Lady of Victory Hosp.* (43 AD2d 898) we stated that "[a] cause of action in contract, as distinguished from one in malpractice, must be based upon the breach of a particular or special agreement * * * An allegation of failure to provide medical care or failure to provide medical service in a proper manner is insufficient, for it is merely an attempt to plead as a contract action one which is essentially a malpractice action". Plaintiff concedes that the complaint does not set forth the necessary contractual relationship required and we agree with Special Term's determination that such cause of action must be dismissed.

However, inasmuch as Special Term's dismissal of this cause of action was not "on the merits" and since it appears that sufficient facts exist upon which plaintiff can plead a viable cause of action in contract, leave to amend the pleading should be given (CPLR 3025, subd [b]; see *Van Minos v Merkley,* 48 AD2d 281; see, also, *Rochester Poster Ad. Co. v Town of Penfield,* 51 AD2d 870; *Liebler v Our Lady of Victory Hosp., supra).* Furthermore, defendants will not be prejudiced in any manner by permitting the amendment (see *Rife v Union Coll.,* 30 AD2d 504).

Plaintiffs' final contention is that Special Term erred in dismissing their claim for punitive damages in the amount of $2,000,000. Such damages may only be assessed when the actions of the tort-feasor constitute gross negligence or "intentional wanton or malicious conduct" *(Johnson v State of New York,* 44 AD2d 151, 153, revd on other grounds 37 NY2d 378, *supra)* and where, as here, the validity of the claim is questioned by a motion for summary judgment, it is incumbent upon plaintiffs to present evidentiary facts sufficient to raise a triable issue of fact *(Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285). Plaintiffs however have failed to meet this burden.

The sole fact alleged by plaintiffs in support of their conten-

of action based upon lack of informed consent (see Public Health Law, § 2805-d) wherein it adopted a similar approach by limiting the doctrine to those cases involving "(a) non-emergency treatment, procedure or surgery, or (b) a diagnostic procedure which involved invasion or disruption of the integrity of the body" (Public Health Law, § 2805-d, subd 2).

tion that the conduct of defendants was intentional, wanton or malicious was that one of the defendants during an examination before trial stated that, due to his religious beliefs, he would not perform an abortion. However, inasmuch as the central issue in this case is the alleged failure of defendants to diagnose adequately the deformed condition of the fetus and not their failure to perform an abortion, the existence of religious beliefs prohibiting the operation has no direct bearing on whether the alleged failure in diagnosis was intentional, wanton or malicious. Furthermore, assuming *arguendo* the truth of this allegation, plaintiffs' attempt to use this statement as evidence of an intentional deprivation of their constitutional right to an abortion is totally without merit since there is no allegation that, in the event an abortion were medically indicated or even desired by plaintiffs, defendant would not have referred them to another physician.

Accordingly, the judgment insofar as it dismissed plaintiffs' causes of action for pain, suffering and mental anguish as a result of the birth of their child is reversed and insofar as it dismissed the cause of action based upon breach of contract is modified to permit plaintiffs leave to serve an amended complaint within 20 days of the entry of this order. In all other respects, the judgment is affirmed.

CARDAMONE and DILLON, JJ. (dissenting). We disagree and vote to affirm. While not under constraint as was the majority in *Howard v Lecher* (53 AD2d 420, 423) in applying the rationale of *Johnson v State of New York* (37 NY2d 378) and *Tobin v Grossman* (24 NY2d 609) to the circumstances of its case, we nonetheless adopt the reasoning of *Howard* and would hold that in the circumstances here no cause of action may be stated by a parent against a physician for the negligent infliction of emotional harm. Nor would we grant leave to replead the fourth cause of action sounding in contract since on this record it is an attempt to plead in different form what is essentially a malpractice action (cf. *Liebler v Our Lady of Victory Hosp.,* 43 AD2d 898).

SIMONS and WITMER, JJ., concur with MOULE, J. P.; CARDAMONE and DILLON, JJ., dissent and vote to affirm the order and judgment in a memorandum.

Order and judgment modified in accordance with opinion by MOULE, J. P., and as modified affirmed, without costs.