*908 OPINION OF THE COURT
Alfred M. Ascione, J.
This is a motion and cross motion by certain of the defendants to dismiss specified causes of action of plaintiffs’ complaint in Action No. 2 of this consolidated medical malpractice action.
The plaintiffs in Action No. 1, Martha Vaccaro, an infant, by her father and natural guardian, Juan Vaccaro, and Juan Vaccaro, individually, have sued the defendants Squibb Corporation, E. R. Squibb & Sons, Inc. (the Squibb defendants), Emil E. Maffucci (the physician) and New Rochelle Hospital Medical Center (the hospital). Action No. 1, was commenced on or about October 2,1975.
These plaintiffs in Action No. 1 allege six causes of action, seeking a total in $30,000,000 in damages, claiming that the infant’s mother, Inez Vaccaro, during her pregnancy with the infant plaintiff, "ingested” a drug manufactured and distributed by the Squibb defendants, known by the product name of "Delalutin”, which drug was administered to her by injection by the defendant physician, as a result of which the infant plaintiff was born by caesarean section on January 10, 1974 at defendant hospital without limbs and with other serious diverse injuries. As to the Squibb defendants, plaintiffs allege negligent manufacture, testing, advertising, representation as to the safety of,said drug, improper instruction as to its use, and that the drug is unsafe and unfit for use by reason of the dangerous side effects, contraindications and insufficient testing, which defendants knew or should have known. Also alleged are breach of warranties, violation of statutory duties and strict tort liability. The claims against the physician and hospital are based on professional negligence in the care, diagnosis, treatment, surgery, discharge and aftercare rendered by these defendants to the infant.
Parenthetically, the drug "Delalutin” is a progestational hormone, known genetically as hydroxyprogesterone caproate (injection), intended to prevent miscarriage. The record before this court shows that the infant’s mother, Inez Vaccaro, has had three pregnancies, one which terminated in the birth of a stillborn child at defendant hospital in January, 1972, another which was terminated by a miscarriage in July, 1972 and the third resulting in the birth of the infant plaintiff on January 10, 1974.
*909 It appears that Inez Vaccaro received injections of Delalutin weekly from May 23, 1973 until October 23, 1973, and monthly thereafter until the infant plaintiffs birth, which injections were administered by the defendant physician.
Action No. 2 was commenced by the plaintiffs Inez Vaccaro and Juan Vaccaro, the mother and father of the infant, against the same defendants, on or about July 29, 1976. The complaint in Action No. 2 alleges 10 causes of action against defendants, 9 of which are the subject of defendants’ motions to dismiss. The causes are as follows:
First: On behalf of plaintiff Inez Vaccaro against the Squibb defendants, alleging that as a result of the ingestion of Delalutin by plaintiff, her infant daughter, Martha Vaccaro, was born without limbs, "causing this plaintiff to sustain severe and permanent personal injuries and fear for her own well being and health, including injury to her nervous system, emotional damage, personality changes, extreme mental anguish”.
The first cause of action is in negligence and the allegations are similar to the allegations of negligence against these defendants in Action No. 1. Plaintiff Inez Vaccaro seeks damages in the amount of $3,000,000 on this cause.
Second: On behalf of plaintiff Juan Vaccaro against the Squibb defendants asserts the same allegations of injuries as his wife, except for the phrase "fear for her own well being and health”, which appears in the first cause. He claims damages as well for medical expenses for his infant daughter, his wife and himself.
The second cause of action seeks damages of $3,000,000 for plaintiff Juan Vaccaro.
Third: On behalf of both plaintiffs against the Squibb defendants and defendant physician is based on breach of warranties in that it is alleged that these defendants represented and warranted that Delalutin was safe and fit for use as a therapeutic drug, of merchantable quality, without side effects dangerous to life and limb. It is claimed that these representations and warranties were false, to plaintiffs’ damage in the amount of $3,000,000.
The fourth and fifth causes of action by both plaintiffs are for violation of statutory duties and strict tort liability, respectively, against the Squibb defendants and defendant physician.
Sixth: By plaintiff Inez Vaccaro is against the defendant *910 physician and defendant hospital for professional negligence in the care, diagnosis, treatment, surgery, discharge and aftercare of this plaintiff, including the use of the drug Delalutin by defendant physician and defendant hospital’s failure to discover and treat plaintiff’s condition caused by the defendant physician.
The fourth, fifth and sixth causes each seek damages of $3,000,000.
Seventh: On behalf of plaintiff Juan Vaccaro against defendant physician and defendant hospital is for the professional negligence alleged in the sixth cause, which caused the birth of his daughter without limbs, resulting in the same injuries and damages also alleged in the second cause. $3,000,000 damages.
Eighth and Ninth, by plaintiffs Inez Vaccaro and Juan Vaccaro, respectively, are against all defendants, each plaintiff claiming derivatively for the loss of services of the other and seeking $1,000,000. Juan Vaccaro, in the ninth cause, also claims loss for medical expenses for his wife.
Tenth: By plaintiffs against defendant physician and defendant hospital for failure to inform plaintiffs of the dangers in the medical treatment and the injections of the drug Delalutin and failure to receive informed consent with respect thereto. Damages $3,000,000.
Essentially, in Action No. 2, plaintiffs are seeking damages for claimed injuries to their nervous systems and emotional damage, personality changes and extreme mental anguish occasioned by the birth of their daughter without limbs and with other serious and permanent injuries and congenital defects due to plaintiff Inez Vaccaro’s ingestion of the drug Delalutin during her pregnancy.
The moving defendants for their part argue that no such claims may be asserted and that New York has repeatedly denied recovery for mental and emotional injuries suffered by another regardless of the relationship, citing Tobin v Gross-man (24 NY2d 609) and Howard v Lecher (53 AD2d 420, affd 42 NY2d 109). (See, also, Park v Chessin, 60 AD2d 80; and Becker v Schwartz, 60 AD2d 587, both Second Department cases.)
Accordingly, the Squibb defendants seek the dismissal of plaintiffs’ first, second, third, fourth, fifth, eighth and ninth causes of action of Action No. 2. Defendant physician, by cross *911 motion, seeks the dismissal of the third, fourth, fifth, sixth, seventh, eighth and ninth causes of actions. The defendants move pursuant to CPLR 3211 (subd [a], par 7) on the grounds of legal insufficiency and that these causes of action do not state a cause of action as a matter of law.
Before a consideration of these cases, the tragedy implicit in the facts of this case set forth above compels this court to observe that it is long overdue for our system of jurisprudence to give rational effect to the realities of life and to the vast changes which have occurred in modern society. Blind adherence to the past and to outmoded shibboleths do not serve our society but only create distrust and cynicism among our citizens in the viability of our system of justice.
Our courts and Legislatures have made great strides in recent years in fashioning or expanding remedies for a changing society in modern, urbanized America, with all its complexities and conflicting interests. Yet, clinging to our jurisprudence are many areas crying out for change to meet life in today’s America. True, as it has been said frequently by our highest courts, there is not a remedy for every wrong (see Tobin v Grossman, supra, p 619 [Breitel, J.]). But frequently, we need only the will to do what needs to be done to redress obvious wrongs. It seems to this court that this is such a case.
For a long time, New York insisted that a plaintiff could not recover for emotional injuries unless there was some bodily contact (Mitchell v Rochester Ry. Co., 151 NY 107). It was not until 1961 that the Court of Appeals overruled Mitchell, and, then, only if there was some fear or threat of bodily harm to the claimant directly. (Battalia v State of New York, 10 NY2d 237.)
In Battalia (supra) the infant plaintiff was placed in a ski lift chair by an employee of the ski center who failed to secure and properly lock the belt intended to protect the occupant. As a result of this alleged negligent act, the infant plaintiff became frightened and hysterical upon the descent, with consequential injuries.
In overruling Mitchell (supra) Judge Burke, reviewing the considerations relied on by the court in Mitchell, found that they were no longer persuasive as a matter of logic or because of public policy considerations. They were, namely, that since plaintiff could not recover for mere fright, there could be no recovery for injuries resulting therefrom. Judge Burke said, further, that in Mitchell it was assumed that the miscarriage *912 suffered by plaintiff was not the proximate result of defendant’s negligence but rather was due to an accidental or unusual combination of circumstances. Finally, Judge Burke pointed out, the Mitchell court reasoned that a recovery would be contrary to public policy because that type of injury could be feigned without detection and it would result in a flood of litigation where damages must rest on speculation. (Battalia, supra, p 240.)
Brushing off easily the first two considerations, Judge Burke held that even the public policy argument was subject to challenge, saying: "Although fraud, extra litigation and a measure of speculation are, of course, possibilities, it is no reason for a court to eschew a measure of its jurisdiction. 'The argument from a mere expediency cannot commend itself to a Court of justice, resulting in the denial of a logical legal right and remedy in all cases because in some a fictitious injury may be urged as a real one.’ ” (Battalia, supra, pp 240-241.)
In conclusion, Judge Burke said (p 242): "The only substantial policy argument of Mitchell is that damages or injuries are somewhat speculative and difficult to prove. However, the question of proof in individual situations should not be the arbitrary basis upon which to bar all actions, and 'it is beside the point * * * in determining sufficiency of a pleading’. [Citation omitted.] In many instances, just as in impact cases, there will be no doubt as to the presence and extent of the damage and the fact that it was proximately caused by defendant’s negligence. In the difficult cases, we must look to the quality and genuineness of proof, and rely to an extent on the contemporary sophistication of the medical profession and the ability of the court and jury to weed out the dishonest claims. Claimant should, therefore, be given an opportunity to prove that her injuries were proximately caused by defendant’s negligence.”
New York has recently extended the rule in Battalia to a situation where defendant’s negligence did not pose a direct threat to cause bodily harm to a plaintiff. (Johnson v State of New York, 37 NY2d 378.) In Johnson, the court (Breitel, Ch. J.) stated the issue (p 379): "[W]hether the daughter of a patient in a State hospital, falsely advised that the patient, her mother, had died, may recover from the State for emotional harm. She sustained the harm as a direct result of the negligent misinformation provided by the hospital in the *913 course of it advising relatives of the death of a patient. The mother was in fact alive and well.”
In finding for claimant, The Court of Appeals reversed the Appellate Division, which had limited the daughter’s award to her pecuniary losses. It held that she may recover for emotional harm because of the State’s negligence, citing Battalia (supra) and Ferrara v Galluchio (5 NY2d 16, 21-22).
"In the light of the Battalia and Ferrara cases (supra), and the reasoning upon which they are based, recovery for emotional harm to one subjected directly to the tortious act may not be disallowed so long as the evidence is sufficient to show causation and substantiality of the harm suffered, together with a 'guarantee of genuiness’ to which the court referred in the Ferrara case (5 NY2d 16, 21, supra; see, also, Battalia v State of New York 10 NY2d 237, 242, supra).” (Johnson, supra, pp 383-384.)
In Johnson (supra, p 383) the court distinguished that case from Tobin v Grossman (24 NY2d 609, supra) where the court refused to extend this expanding doctrine of recovery for emotional harm to the so-called "bystander”. In Tobin, the court held that "no cause of action lies for unintended harm sustained by one, solely as a result of injuries inflicted upon another, regardless of the relationship and whether the one was an eyewitness to the incident which resulted in the direct injuries” (p 611). "Thus, the rationale underlying the Tobin case, namely the real dangers of extending recovery for harm to others than those directly involved, is inapplicable to the instant case.” (Johnson, supra, p 383.)
The Tobin case involved a claim for emotional injuries to a mother whose two-year-old infant child was struck by a vehicle, after she heard the screeching brakes and witnessed immediately thereafter her child’s severely injured body lying on the ground. The mother’s cause of action was dismissed, the court observing (p 612) that: "No American case has held that a mother can recover for her own injuries due to shock and fear for her child as a result of an accident which she did not view.” The court noted that California had permitted recovery in such a suit where the accident occurred in the mother’s presence. (See Dillon v Legg, 68 Cal 2d 728.)
In Tobin, Judge Breitel, writing for the majority (p 615), was concerned with questions of "foreseeability * * *, proliferation of claims, fraudulent claims, inconsistency of the zone of danger rule, unlimited * * *, unduly burdensome liability, *914 and the difficulty of circumscribing the area of liability.” Though all these factors offered problems to the court, the latter factor appears to have been conclusive in its determination. Judge Breitel stated it thus (p 617): "Every parent who loses a child or whose child of any age suffers an injury is likely to sustain grievous psychological trauma, with the added risk of consequential physical harm. Any rule based solely on eyewitnessing the accident could stand only until the first case comes along in which the parent is in the immediate vicinity but did not see the accident. Moreover, the instant advice that one’s child has been killed or injured, by telephone, word of mouth, or by whatever means, even if delayed, will have in most cases the same impact. The sight of gore and exposed bones is not necessary to provide special impact on a parent. Again, the logical difficulty of excluding the grandparent, the relatives, or others in loco parentis, and even the conscientious and sensitive caretaker, from a right to recover, if in fact the accident had the grave consequences claimed, raises subtle and elusive hazards in devising a sound rule in this field.”
In conclusion, The Court of Appeals said (p 619): "Beyond practical difficulties there is a limit to attaining essential justice in this area. While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. * * * The risks of indirect harm from the loss or injury of loved ones is pervasive and inevitably realized at one time or another. Only a very small part of that risk is brought about by the culpable acts of others. This is the risk of living and bearing children. It is enough that the law establishes liability in favor of those directly or intentionally harmed.”
In his dissent in Tobin (supra, pp 619-621) Judge Keating took sharp issue with the majority, urging that there shuld be recovery for a bystander stating (p 620): "Ever since MacPherson v. Buick Motor Co. (217 N. Y. 382) was decided more than a half century ago, there has been expanding recognition that the argument concerning unlimited liability is of no merit, yet the aberrations persist. One would imagine that we were here involved with a catastrophic loss. There have already been decisions imposing liability of far greater dimensions that can ever arise if we should embark upon a search for 'essential justice’ in the bystander class of cases.”
Judge Keating felt that there should be no limitation on *915 bystander recovery, except as needed on a case-by-case basis, using proximate cause and foreseeability as a means to avoid anomalous results. "The only real requirement, however, which policy and justice dictate, is stringent evidence of causation and of actual injury to deter those who would use a sound and just rule as a cover for spurious claims. * * * As the majority notes, its position has found little, if any, support by legal scholars.” (Supra, pp 620-621.)
In this connection, it is important to note that subdivisions (2) and (3) of section 436 of the Restatement of Torts 2d, (Physicial Harm Resulting From Emotional Disturbance) have applicability here. In subdivision (2) the rule is stated: "If the actor’s conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.”
And in subdivision (3): "The rule stated in Subsection (2) applies where the bodily harm to the other results from his shock or fright at harm or peril to a member of his immediate family occurring in his presence.”
In the Comment on subdivision (3), it is explained that the rule stated in subdivision (2) applies and the defendant is subject to liability if the third person is a member of plaintiffs immediate family, and the peril or harm to such a person occurs in the plaintiffs presence "even though the plaintiff’s shock or fright is not due to any fear for his own safety, but to fear for the safety of his wife or child.”
In recent years, advancements in medical science, and the development of new drugs, have imposed additional duties and responsibilities on physicians, to keep abreast of the literature and the latest developments in the use of such drugs. It is fair to say that some drugs are so relatively new that we do not as yet know their long-term effects on on the human body, whatever may be their claimed immediate therapeutic value.
On a motion to dismiss, this court must assume the truth of the allegations contained in the causes of action under attack. (Cohn v Lionel Corp., 21 NY2d 559, 562.) The pleader is entitled to every favorable inference that might be drawn from the pleading. (Westhill Exports v Pope, 12 NY2d 491, 496.)
Thus, the negligence, breach of warranties and other viola *916 tions of duty owed to plaintiffs are all assumed, as well as their claims of damage resulting therefrom.
The defendants, in addition to Tobin v Grossman (supra), rely heavily on Howard v Lecher (53 AD2d 420, affd 42 NY2d 109, supra), where the Court of Appeals affirmed the dismissal of the cause of action of parents, who sued the wife’s physician, for the mental distress and emotional disturbances they suffered as a result of their infant daughter having been born with and eventually succumbing to Tay-Sachs disease, a progressive degenerative genetic disorder affecting the nervous system. It was alleged by plaintiffs that the doctor was negligent in that he failed to take a proper genealogical history or to properly evaluate it, by which he should have known of the high risk that the fetus would suffer from the disease. They also claimed that had they known that there was a test available to determine the existence of the disease, they would have undergone the tests and upon learning that the fetus was so afflicted, they would have aborted the pregnancy.
This 4 : 3 decision rests squarely on that court’s holding in Tobin v Grossman (24 NY2d 609, supra). Judge Wachtler, writing for the majority, said: "It cannot be denied that they themselves [the parents] were made to bear no physical or mental injury, other than the anguish of observing their child suffer, as a result of the defendant’s presumed negligence, nor did that negligence directly cause the child to fall victim to the disease. Analogous, indeed stronger since the injuries would directly result from the tortious conduct of the doctor, would be a case in which the doctor, in delivering the infant from the mother’s womb, committed an act of negligence causing frightful injuries to the child, but in no manner physically injuring the parent. Were that parent to suffer psychic injury as a result of the doctor’s misfeasance, it is clear that there could be no recovery (Tobin v Grossman, supra). Nor can the parents recover in the present.” (Howard v Lecher, 42 NY2d, supra, pp 112-113.)
Judge Wachtler reiterated the language of Tobin, in these words (p 113): "There can be no doubt that the plaintiffs have suffered and the temptation is great to offer them some form of relief. Ideally, there should be a remedy for every wrong. This is not the function of the law, however, for ’[e]very injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal *917 consequences of wrongs to a controllable degree’ (Tobin v Grossman, 24 NY2d 609, 619, supra).”
It should also be noted that the Howard case raised considerations of the controversial "wrongful life” doctrine, the Howards claiming that they would have aborted the fetus if they had known the facts.
Judge Cooke writing for the dissenters, points out that certain facts of life of the 1970’s must be recognized and accepted at the outset, such as the right of a mother to abort a pregnancy and the existence of tests to identify carriers and the occurrence of Tay-Sachs disease in their yet unborn offspring. Next, Judge Cooke looks to the physician-patient relationship and the great reliance, faith and confidence placed on the physician by the patient, from which a duty arises and flows to the patient. Judge Cooke found, as alleged, a breach of that duty. He says (p 115), "Put simply, the question is whether a patient may recover for her physician’s negligence.”
Taking sharp issue with the majority’s reliance on Tobin, he states (p 116): "As did the Appellate Division majority before it, the majority here seeks to place Mrs. Howard in the shoes of a bystander and deny her recovery for want of a direct injury. But unlike Tobin v Grossman (24 NY2d 609) upon which the court relies, it was the mother here to whom the defendant’s duty was owed.
"Rather than liken this case to Tobin v Grossman, which case has no relevance to the facts alleged here, comparison can more aptly be made with Johnson v State of New York (37 NY2d 378, supra). * * * There, as here, the injury was inflicted directly upon the individual claiming the harm and the same individual to whom the duty was owed was the one directly injured by its breach. Logic, as well as justice, compelled the conclusion in Johnson, as it does here, that all proven harmful consequences proximately caused by the tortious act should be compensable.
"On this, the correct analysis, no legitimate fear of extension to remote family members can be expressed, for only the patient herself is owed the physician’s duty and has suffered by its breach”.
Thus, the dissenters would not allow the father’s suit since he stands outside the sphere of duty circumscribed in a malpractice action. "Like any spouse, however, he may be *918 entitled to maintain derivatively a cause of action for loss of consortium.” (Howard, supra, p 116.)
Concluding, the dissent noted (pp 116-117): "To infer that a mother is a bystander at the birth of her infant manifests a basic misunderstanding of the duty owed a patient by a physician. In such a circumstance as hypothesized, there are two within the zone of danter, and the doctor owes a duty to each.”
Just prior to the Court of Appeals decision in Howard, affirming the Appellate Division, Second Department, denying the parents’ recovery for emotional harm, the Appellate Division, Fourth Department, in Karlsons v Guerinot (57 AD2d 73), reversed Special Term’s dismissal of such claims in a case based on somewhat similar facts to those alleged in the instant case.
In Karlsons (supra) the mother was 37 years old, had a thyroid condition and had previously given birth to a deformed child. It was alleged that upon becoming pregnant again she retained the services of the defendant doctors and that the doctors had been informed of her medical history but they failed to advise the parents of the risks involved in the pregnancy, particularly with regard to the likelihood of giving birth to another deformed child. Also alleged was that the defendants failed to inform the mother of the existence of tests which could detect whether the fetus was in fact deformed. It was claimed by the parents that had they been informed of these facts, the mother would not have consented to the continuation of the pregnancy. Subsequently, the mother gave birth to a mongoloid child.
As relevant here, inter alia, each of the parents sought recovery for the "pain, suffering and mental anguish incident to the delivery of the child and also that caused by the birth of their child in an impaired condition” (Karlsons, supra, p 75). Special Term dismissed the individual claims of the parents for mental anguish resulting from the birth of a child in an impaired condition.
Reversing, as to these claims for emotional harm, the court reviewed the Tobin v Grossman, Johnson v State of New York and Howard v Lecher cases (Howard had not yet been decided by the Court of Appeals) (supra) and disagreed with and rejected the holding of the Second Department in Howard (53 AD2d 420, supra) instead finding that the parents’ claims were maintainable because the emotional harm suffered by the parents "is the type of direct injury flowing from defendants’ *919 alleged breach of duty to the parents that was contemplated by the Court of Appeals in Johnson. Additionally, the principal reason for denying recovery for emotional harm, viz., the possibility of numerous fictitious claims, is not present here (see Tobin v Grossman, 24 NY2d 609, supra). Inasmuch as plaintiffs’ injuries were directly caused by defendants’ alleged breach of duty, it follows that damages are recoverable for their resulting pain, suffering and mental anguish.” (Karlsons, supra, p 78.)
The Court of Appeals has not yet spoken on the Karlsons case, but the reasoning of the Fourth Department seems eminently correct and persuasive.
Turning to the instant case, where the harm is more direct, this court is persuaded that the parents have pleaded valid causes of action, which are hereby sustained. As was to be expected, this court has now been presented with a pleading which takes us one giant step further along the path towards judicial recognition of the need to permit recovery in these tragic cases. A questionable principle, denying recovery for emotional injuries to a mother — bystander to an accident involving her child, can have no reasonable application to the facts as presented here. The Johnson case, and now Karlsons, point us in the right direction.
Neither Inez Vaccaro nor Juan Vaccaro is a bystander here. As alleged, it was as the direct result of the numerous injections of Delalutin, administered to the mother by her physician during her pregnancy, that she gave birth to a deformed child, without arms or legs. This is direct harm to these plaintiffs caused by the negligence of and breach of duty of the defendants owed to these plaintiffs. The harm was not at birth or as a result of birth but directly while the fetus was developing in the mother’s womb. Furthermore, plaintiff Inez Vaccaro has alleged "fear for her own well being and health” as a result of her "ingestion” of the drug. If the injections of this drug were the direct and proximate cause of the birth of a deformed infant, this court will permit both plaintiffs to prove whatever other injuries it may have caused or produced, as a natural consequence of the wrongful act. (Johnson v State of New York, supra: Ferrara v Galluchio, 5 NY2d 16, supra; Battalia v State of New York, supra; Karlsons v Guerinot, supra.)
Defendants’ motions are denied in all respects.